**CARSON HARBOR VILLAGE LTD.,** a California limited partnership, dba Carson Harbor Village Mobile Home Park, Plaintiff–Appellant,

v.

**CITY OF CARSON,** a Municipal Corporation, Defendant–Appellee.

No. 93–55234.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 9, 1994.

Decided Sept. 30, 1994.

Richard E. Posell, Jonathan J. Panzer, Rhonda H. Mehlman, Shapiro, Posell, Rosenfeld & Close, Los Angeles, CA, Robert E. Jagiello, Jagiello & Pech, Long Beach, CA, for plaintiff-appellant.

Rochelle Brown, Sayre Weaver, Richards, Watson & Gershon, Los Angeles, CA, for defendant-appellee.

Before: BROWNING, BEEZER and TROTT, Circuit Judges.

BEEZER, Circuit Judge:

Carson Harbor Village Ltd. appeals the dismissal of its complaint alleging that laws regulating mobile home parks in the City of Carson, California violate the Due Process and Takings Clauses of the United States Constitution. We affirm.

I

Carson Harbor Village Ltd. ("Carson Harbor") owns a mobile home park containing 409 rental spaces in the City of Carson ("city"). Residents of the park own their mobile homes but rent spaces from Carson Harbor. Despite their name, mobile homes are largely immobile. As a practical matter, moving one is expensive and difficult. Once in place, the vast majority of mobile homes are never moved again.[1] If a mobile home owner desires to relocate, he usually sells the mobile home in place and the purchaser rents the space from the park owner.

Since 1978, mobile home park owners in California have been subject to the Mobile Home Residency Law, Cal.Civ.Code § 798 et seq. ("Residency Law"). The Residency Law severely limits the bases upon which a park owner may terminate a mobile home owner's tenancy. It also prohibits park owners from requiring the removal of a mobile home when it is sold. Park owners cannot charge a transfer fee upon sale, nor can they disapprove a purchaser as long as the purchaser demonstrates an ability to pay the space rental. The Residency Law, however, does not include any rent control provisions.

In 1979, the city passed the Mobilehome Space Rent Control Ordinance ("Rent Control Law"), which sets a maximum ceiling on rent levels that can be charged for a space in mobile home parks. Carson, Cal., Ordinance 79–485U (May 20, 1979); Carson, Cal., Municipal Code, art. IV, ch. 7, § 4700 et seq. The Rent Control Law also contains a provision prohibiting park owners from increasing

---

[1]. Only about one in every hundred mobile homes is ever moved. Hirsh & Hirsh, Legal–Economic Analysis of Rent Controls in a Mobile Home Context: Placement Value and Vacancy Decontrol, 35 UCLA L.Rev. 399, 405 (1988).

rents upon termination of a tenancy or sale of a mobile home. It also establishes the Mobilehome Park Rental Review Board ("Review Board") to hear claims for increases above the ceiling. The Review Board's decisions are guided by a set of policy guidelines adopted by the Carson City Council. The Rent Control Law makes legislative findings that park tenants face a "low vacancy rate and rapidly rising space rents" and that the "purchase of a mobile[ ]home involves a substantial investment, and its relocation is expensive and difficult." Carson, Cal., Ordinance 79–485U, Sec. 2, (May 20, 1979). As the findings suggest, and as the city argues on appeal, the Rent Control Law's purpose is to mitigate rising rents and to protect tenants from losing their investments if they sell their mobile homes.

In 1982, the city supplemented the Rent Control Law with an ordinance requiring park owners to obtain city approval before converting mobile home parks to other uses or vacant lots. Carson, Cal., Ordinance 82–589U (Mar. 8, 1982); Carson, Cal., Municipal Code art. IX, ch. 1, pt. 2, div. 8, § 9128.21. Later in 1982, the city passed another ordinance which, among other things, grants the city the power to require a park owner to bear the costs of relocating tenants to another park, reimburse tenants for the on-site value of their coaches, or set aside a certain number of units for park tenants, in the event the park is closed or converted to another use. Carson, Cal., Ordinance 82–618 (Sept. 20, 1982). Together, these two ordinances constitute the Conversion Law. The stated purpose of the Conversion Law is to "minimize the impact [park] closures ... will have on park residents and to provide assistance to park residents in relocating." Carson, Cal., Municipal Code, art. IX, ch. 1, pt. 2, div. 8, § 9128.21.

Carson Harbor purchased Carson Harbor Village Mobile Home Park on March 31, 1983, after enactment of the Rent Control and Conversion Laws. On January 30, 1989, Carson Harbor, pursuant to the Rent Control Law, applied to the City of Carson's Community Development Department for an increase in rent above the ceiling. On October 19, 1989, after a hearing before the Review Board, the city granted the request only in part.

On July 2, 1990, Carson Harbor filed suit in district court alleging that the Rent Control Law and Conversion Law are unconstitutional. In its complaint, Carson Harbor asserted claims under the Takings and Due Process Clauses of the United States Constitution, and Art. I, § 19 of the California Constitution.[2]

The district court dismissed the entire complaint, concluding: (1) the due process claim failed to state a claim under Fed. R.Civ.P. 12(b)(6), (2) the takings claims based on the Rent Control Law were not ripe for federal adjudication, and (3) the takings claim based on the Conversion Law was not ripe and also failed to state a claim under Fed.R.Civ.P. 12(b)(6). The district court also concluded it lacked pendent jurisdiction to hear the state-law inverse condemnation claim, since the federal claims had been dismissed. Carson Harbor timely appeals from dismissal of the complaint.[3]

---

**2.** Art. I, § 19, of the California Constitution provides: "Private property may be taken or damaged for public use when just compensation, ascertained by a jury unless waived, has first been provided to, or into court for the owner...."

**3.** An order dismissing the complaint but not dismissing the action ordinarily is not appealable under 28 U.S.C. § 1291. *Hoohuli v. Ariyoshi,* 741 F.2d 1169, 1171 n. 1 (9th Cir.1984). Nevertheless, we have jurisdiction to hear the appeal in this case. Carson Harbor's takings claims were dismissed on ripeness grounds. When, as here, a dismissal is based on lack of jurisdiction, it is a "final order" and is appealable under § 1291.

*McGuckin v. Smith,* 974 F.2d 1050, 1053 (9th Cir.1992). Carson Harbor's due process claim was dismissed without prejudice and the court granted Carson Harbor leave to amend. While a dismissal without prejudice usually is not appealable, an exception applies when the plaintiff "elects to stand on the dismissed complaint" and satisfies the other requirements for a final, appealable judgment. *Id.* (quoting *Welch v. Folsom,* 925 F.2d 666, 668 (3d Cir.1991)). In this case, Carson Harbor chose not to amend its pleadings and, instead, elected to stand on the dismissed complaint. The district court's dismissal of the complaint therefore is a "final order" and is appealable under § 1291.

## II

Carson Harbor contests the district court's dismissal of its substantive due process claim for failure to state a claim. We review *de novo* a district court's Rule 12(b)(6) dismissal. *Oscar v. University Students Co-Operative Ass'n,* 965 F.2d 783, 785 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 655, 121 L.Ed.2d 581 (1992). In reviewing the sufficiency of a claim, we accept all allegations of material fact as true and construe them in the light most favorable to the appellant. *Love v. United States,* 915 F.2d 1242, 1245 (9th Cir.1989). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (internal quotation omitted).

Carson Harbor's substantive due process claim is based on the Rent Control Law which prohibits park owners from increasing rent during a tenancy and at the *termination* of a tenancy. Carson Harbor alleges that Rent Control Law, when acting in concert with the California Mobile Home Residency Law's restrictions on tenancy terminations, has the effect of permitting tenants to occupy the spaces at below-market rents for an unlimited time. When a mobile home tenant sells his home, the seller can charge the buyer a premium for this right over and above the normal market value of the home itself. This premium, Carson Harbor alleges, is a "windfall" to selling tenants. Carson Harbor alleges that the prohibition on rent increases at the termination of a tenancy violates due process because it bears no rational relationship to preventing excessive rents for *selling* tenants, and because the law "does nothing" to preserve low or moderate income housing.

A generally applicable rent-control ordinance will survive a substantive due process challenge if it is *"designed* to accomplish an objective within the government's police power, and if a rational relationship existed between the provisions and the purpose of the ordinances." *Boone v. Redevelopment Agency of San Jose,* 841 F.2d 886, 892 (9th Cir.1988) (quoting *Scott v. City of Sioux City,* 736 F.2d 1207, 1216 (8th Cir.1984), *cert. de-*

*nied,* 471 U.S. 1003, 105 S.Ct. 1864, 85 L.Ed.2d 158 (1985)), *cert. denied,* 488 U.S. 965, 109 S.Ct. 489, 102 L.Ed.2d 526 (1988) (emphasis added). This deferential inquiry does not focus on the ultimate effectiveness of the law, but on whether the enacting body could have rationally believed at the time of enactment that the law would promote its objective. *Williamson v. Lee Optical Co.,* 348 U.S. 483, 487–88, 75 S.Ct. 461, 464–65, 99 L.Ed. 563 (1955).

In examining the sufficiency of the complaint, we assume that the facts contained in Carson Harbor's pleadings are true. Carson Harbor's pleadings incorporate the text of the statute. As noted previously, the apparent purpose of the ordinance is to mitigate hardships caused by rising rents and to protect the tenants' investments in their mobile homes if they choose to sell. We are free to examine the face of the statute and determine whether, in light of its purposes, Carson Harbor is able to prove any set of facts in support of its claim. *See Boone,* 841 F.2d at 892–93.

We hold that Carson Harbor has failed to state a claim upon which relief can be granted. Carson Harbor's own pleadings allege that the transfer of the premium grants a "windfall" to tenants who sell. In light of this admission, we have no difficulty concluding that a rational legislator could have believed that the prohibition of rent increases at the termination of a tenancy would further the law's goals, at least insofar as the purpose is to protect the investments of existing tenants. As we have stated before in rejecting a similar claim:

> [A] rational legislator could have believed that the unfettered right of a park owner to raise the rent on a space when ownership of a mobile home was transferred might make it difficult for a mobile home owner to sell. The legislator thus could have believed that the ordinance protects owners' investments in their units.

*Levald, Inc. v. City of Palm Desert,* 998 F.2d 680, 690 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 924, 127 L.Ed.2d 217 (1994). It may be true that the effect of the ordinance is to take "money from the landlord

and put[ ] it into the pocket of a tenant who no longer resides at the park." *Id.* (quoting *Sierra Lake Reserve v. County of Rocklin,* 938 F.2d 951, 958 (9th Cir.), *vacated and remanded,* —— U.S. ——, 113 S.Ct. 31, 121 L.Ed.2d 4 (1992), *reinstated in part,* 987 F.2d 662 (9th Cir.1993)). It may also be true, as Carson Harbor alleges, that the ordinance falls somewhat short of its objectives—that "incoming" tenants forced to pay a premium do not receive the benefits of reduced housing costs that the selling tenant enjoys. "However, while one might believe that the ordinance is an ineffective—and indeed draconian—means by which to effect its goals, '[h]ow well the ordinance serves [its] purpose[s] is a legislative question, one the court will not consider' in the context of a substantive due process challenge." *Levald,* 998 F.2d at 690 (quoting *Sierra Lake Reserve,* 938 F.2d at 958). "[T]he law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative means was a rational way to correct it." *Id.* (quoting *Lee Optical Co.,* 348 U.S. at 487–88, 75 S.Ct. at 464–65). Dismissal of the substantive due process claim was proper.

### III

 The Takings Clause of the Fifth Amendment provides: "[N]or shall property be taken for public use, without just compensation." There are two classes of Fifth Amendment takings recognized by the Supreme Court: physical takings and regulatory takings. *Compare Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) (physical taking) *with First English Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1986) (regulatory taking). When the government authorizes an unwanted physical occupation of an individual's property, the Takings Clause generally requires compensation. *Yee v. City of Escondido,* —— U.S. ——, ——, 112 S.Ct. 1522, 1526, 118 L.Ed.2d 153 (1992). When the government merely regulates the use of property, the Fifth Amendment is violated if the land-use regulation "does not substantially advance legitimate state interests *or* denies an owner economically viable use of his land." *Lucas v. South Carolina Coastal Council,* —— U.S. ——, ——, 112 S.Ct. 2886, 2894, 120 L.Ed.2d 798 (1992) (quoting *Agins v. Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980)).[4] A regulation also may effect a taking when "the purpose of the regulation or the extent to which it deprives the owner of the economic use of the property suggest that the regulation has unfairly singled out the property owner to bear a burden that should be borne by the public as a whole." *Yee,* —— U.S. at ——, 112 S.Ct. at 1526.

 Carson Harbor argues that the Rent Control Law and the Conversion law are regulatory takings. A regulatory taking may be challenged in two ways: through a "facial" challenge or an "as-applied" challenge. "A facial challenge involves 'a claim

---

4. When the effects of a regulation do not "substantially advance a legitimate state interest," compensation is not automatically due. Rather, the proper remedy for an invalid exercise of the police power is amendment or withdrawal of the regulation and, if authorized and appropriate, damages. *See Williamson Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 197, 105 S.Ct. 3108, 3122, 87 L.Ed.2d 126 (1985). However, if the landowner was deprived of all *use* of the property while the invalid law was in effect, mere withdrawal of the regulation is an insufficient remedy and compensation for the use of the property during the period in which the law was in effect must be paid. *First English Evangelical Lutheran Church,* 482 U.S. at 321, 107 S.Ct. at 2389. If the landowner was not deprived of all use while the invalid law was in effect, compensation is not an issue unless the government seeks to accomplish its ends through a constitutional means, such as eminent domain. *See Nollan v. California Coastal Comm'n,* 483 U.S. 825, 841–42, 107 S.Ct. 3141, 3150–51, 97 L.Ed.2d 677 (1987); *Williamson,* 473 U.S. at 197–99, 105 S.Ct. at 3122–23.

If the regulation "denies an owner economically viable use of his land," an inquiry into the state interest advanced in support of the regulation is not required. *Lucas,* —— U.S. at —— - ——, 112 S.Ct. at 2893–94. Rather, a court must inquire into whether the use proscription was inherent in the property's title to begin with. If it was not, a "total taking" has occurred and the government must rescind the regulation or pay compensation. *Id.* at ——, 112 S.Ct. at 2901.

that the mere enactment of a statute constitutes a taking,' while an as-applied challenge involves 'a claim that the particular impact of a government action on a specific piece of property requires the payment of just compensation.'" *Levald,* 998 F.2d at 686 (quoting *Keystone Bituminous Coal Ass'n v. De-Benedictis,* 480 U.S. 470, 494, 107 S.Ct. 1232, 1246, 94 L.Ed.2d 472 (1987)). Because each type of challenge raises different ripeness issues, *Levald,* 998 F.2d at 686, we consider Carson Harbor's as-applied and facial takings claims in turn.

## A

Carson Harbor raises two as-applied taking claims.[5] First, it claims that the Review Board's partial denial of a request for a rent increase constitutes an as-applied taking because it prevents Carson Harbor from meeting its operating expenses and realizing a reasonable profit. Second, it claims that the Conversion Law's provisions allowing the city to impose on park owners the costs of relocating tenants in the event of closure or conversion of a park is "confiscatory" and constitutes an as-applied taking.

■ The district court concluded that neither as-applied claim was ripe for federal adjudication under the two-part rule established in *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). We review *de novo* the district court's ripeness determination, as ripeness is a jurisdictional issue. *See Bourassa v. Desrochers,* 938 F.2d 1056, 1057 (9th Cir.1991).

■ In *Williamson,* the Supreme Court placed two independent hurdles to the filing of a taking claim in federal court against a state or local government. The first requires that before filing suit, the claimant seek a final decision from the government entity regarding the application of the regulation to the property at issue. *Id.* at 186, 105 S.Ct. at 3116. To meet this requirement, Carson Harbor must make "at least one 'meaningful application'" for a variance from the rent control law. *See Kinzli v. City of Santa Cruz,* 818 F.2d 1449, 1455 n. 6 (9th Cir.) (quoting *MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 353 n. 8, 106 S.Ct. 2561, 2568, 91 L.Ed.2d 285 (1986)), *modified on other grounds,* 830 F.2d 968 (9th Cir. 1987), *cert. denied,* 484 U.S. 1043, 108 S.Ct. 775, 98 L.Ed.2d 861 (1988).

The second hurdle established by *Williamson* requires a claimant to "'seek compensation through the procedures the State has provided for doing so' before turning to the federal courts." *Sinaloa Lake Owner's Ass'n v. City of Simi Valley,* 882 F.2d 1398, 1402 (9th Cir.1989) (quoting *Williamson,* 473 U.S. at 194–95, 105 S.Ct. at 3120–21), *cert. denied,* 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990)). The reason for requiring a claimant to seek compensation from the state first is that the Takings Clause "is designed not to limit the governmental interference with property rights *per se,* but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." *First English Evangelical Lutheran Church,* 482 U.S. at 315, 107 S.Ct. at 2386. "So long as the state provides 'an adequate process for obtaining compensation,' no constitutional violation can occur until the state denies just compensation." *Sinaloa,* 882 F.2d at 1402 (quoting *Williamson,* 473 U.S. at 194–95, 105 S.Ct. at 3121). *Williamson,* however, does not require a landowner to bring a state court action where it would be

---

**5.** In its complaint, Carson Harbor alleges that the Rent Control Law also effected a physical taking by allowing mobile home tenants to capture the premium which, Carson Harbor argues, belongs to the park owner. The subsequent decision in *Yee v. City of Escondido,* —— U.S. ——, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992), prompted Carson Harbor on appeal to recharacterize the alleged taking as regulatory in nature. This change in strategy does not constitute a new claim on appeal and, therefore, we are not barred from hearing it. *Yee,* —— U.S. at ——, 112 S.Ct. at 1532; *Levald,* 998 F.2d at 685–86.

Carson Harbor, however, further attempts to challenge the transfer of the premium in an as-applied takings claim. We reject the notion that it constitutes an as-applied claim. In *Levald,* which involved similar facts, we noted that the premium is "relevant only to a facial, not an as-applied, regulatory challenge. It is not a particular application of the statute that gives rise to the premium; the premium arises solely from the existence of the statute itself." *Levald,* 998 F.2d at 689. We therefore construe the claim involving the premium as a facial challenge, and address it later in section IIIB.

futile under existing state law. *Williamson,* 473 U.S. at 196–97, 105 S.Ct. at 3121–22. "[T]he appropriate point for determining the adequacy of state compensation procedures is at the time the alleged taking occurs." *Sinaloa,* 882 F.2d at 1402. If, at the time of the alleged taking, no state compensation remedy was available or it would have been otherwise futile for the landowner to seek a remedy in state court, we view that fact as the functional equivalent of a denial of compensation. *See Levald,* 998 F.2d at 687.

■ Carson Harbor's claim involving the application of the rent control law unquestionably meets *Williamson's* first ripeness hurdle. Carson Harbor made a "meaningful application" for a variance from the rent control law by submitting an application for a rent increase in October, 1989, which the Review Board partially denied. The district court, however, concluded that Carson Harbor had failed to meet the second ripeness hurdle because a remedy for regulatory takings through a claim of inverse condemnation was available in California in October, 1989. The remedy has been available since 1987, when the Supreme Court ruled in *First English Evangelical Lutheran Church,* 482 U.S. at 315, 107 S.Ct. at 2385–86, that California's lack of a damages remedy for a regulatory taking was unconstitutional. Because Carson Harbor does not allege any error with respect to the district court's conclusion on this claim, we agree that the as-applied claim against the Rent Control Law is not ripe.

■ Carson Harbor's other as-applied claim, which challenges the Conversion Law, also is not ripe. Carson Harbor has failed to meet the first hurdle of *Williamson,* which requires a claimant to obtain a final decision regarding the application of the regulation from the governing entity. *See Williamson,* 473 U.S. at 186–87, 105 S.Ct. at 3116–17. This ripeness doctrine requires that the plaintiff not only obtain a *final* decision, but that he seek an *initial* decision through the procedures provided by the governing entity. *See id.* at 187–88, 105 S.Ct. at 3116–17. In this case, the Conversion Law requires that a park owner intending to convert his property

must file a plan and submit it for the city's review. Carson Harbor has not done so, nor has it taken any other measure indicating a present intention to sell or convert its property. Neither of Carson Harbor's as-applied claims are ripe.

**B**

Carson Harbor also raises two facial takings claims. First, Carson Harbor claims that the Rent Control Law constitutes a taking by allowing the mobile home tenants to capture the premium, which, Carson Harbor argues, belongs to park owners. As noted, we construe this claim as a facial challenge.[6] Second, Carson Harbor claims that the Conversion Law is a facial taking because the law interferes with the right to dispose of property. As part of the second facial claim, Carson Harbor also claims that the Conversion Law is "unconstitutional" on its face, and seeks a favorable declaratory judgment.

■ We first address whether Carson Harbor has standing to litigate its facial claims. Because standing is a necessary element of federal jurisdiction, we raise the issue of standing *sua sponte. See City of South Lake Tahoe v. California Tahoe Regional Planning Agency,* 625 F.2d 231, 233 (9th Cir.), *cert. denied,* 449 U.S. 1039, 101 S.Ct. 619, 66 L.Ed.2d 502 (1980).

■ Article III limits the judicial power of the federal courts to "cases" and "controversies." "[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant'...." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (quoting *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979)). "This is the 'actual injury' component of the standing doctrine [and] requires an injury be 'real and immediate,' not merely 'conjectural' or 'hypothetical.'" *Casey v. Lewis,* 4 F.3d 1516, 1519 (9th Cir.1993). A plaintiff asserting a facial

---

**6.** *See supra* note 5.

challenge to a statute must demonstrate that he "has sustained or is imminently in danger of sustaining a direct injury" as the result of the statute. *See id.* This injury requirement applies in a declaratory judgment action. *See Alabama State Fed'n of Labor v. McAdory,* 325 U.S. 450, 463, 65 S.Ct. 1384, 1390–91, 89 L.Ed. 1725 (1945).

In determining Carson Harbor's standing to assert facial claims, we " 'accept as true all material allegations in the complaint' and 'construe the complaint in favor of the complaining party.' " *Pennell v. San Jose,* 485 U.S. 1, 7, 108 S.Ct. 849, 855, 99 L.Ed.2d 1 (1988) (quoting *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975)).

■ Both facial claims necessarily rest on the premise that an interest in property was taken from all mobile home property owners upon the statute's enactment. Given this premise, Carson Harbor has suffered no "actual injury." In a facial taking, the harm is singular and discrete, occurring *only* at the time the statute is enacted. *See Levald,* 998 F.2d at 688. The Rent Control Law was enacted in 1979, and the Conversion Law in 1982. Carson Harbor did not purchase the mobile home park until 1983. Because Carson Harbor did not own the property when the statutes were enacted and when the alleged facial takings occurred, it has incurred no injury entitling it to assert a facial claim. *See United States Olympic Comm. v. Intelicense Corp., S.A.,* 737 F.2d 263, 267–68 (2d Cir.), *cert. denied,* 469 U.S. 982, 105 S.Ct. 387, 83 L.Ed.2d 321 (1984) (enactment of statute could not effect a taking because property owner did not own the property when the statute became law); *see also United States v. Dow,* 357 U.S. 17, 20–21, 78 S.Ct. 1039, 1043–44, 2 L.Ed.2d 1109 (1958); *Cavin v. United States,* 956 F.2d 1131, 1134 (Fed. Cir.1992). The reason for determining a facial taking as of the time of a statute's enactment is self evident:

In the takings context, the basis of a facial challenge is that the very enactment of the statute has reduced the value of the property or has effected a transfer of a property interest. This is a *single harm,* measurable and compensable *when the statute is passed.*

*Levald,* 998 F.2d at 688 (emphasis added).[7] A landowner who purchased land after an alleged taking cannot avail himself of the Just Compensation Clause because he has suffered no injury. The price paid for the property presumably reflected the market value of the property minus the interests taken. Carson Harbor has no standing to assert facial claims based on the loss of the premium and the loss of the right to dispose of property.

We note that Carson Harbor's facial claim against the Rent Control Law also alleges that the law "does not substantially advance any legitimate government interest." Under this theory of takings, the law is invalid if the required dedication of property is unrelated in nature, or disproportionate in extent, to the problem that the government seeks to mitigate or control. *See Dolan v. City of Tigard,* —— U.S. ——, —— – ——, 114 S.Ct. 2309, 2319–20, 129 L.Ed.2d 304 (1994); *Nollan v. California Coastal Comm'n,* 483 U.S. 825, 841–42, 107 S.Ct. 3141, 3150–51, 97 L.Ed.2d 677 (1987). The Supreme Court has emphasized that when a *facial* claim is based on this theory, the claim does *not* depend on the deprivation of a landowner's particular property interest or on the extent to which the landowner is compensated. *Yee v. City of Escondido,* —— U.S. ——, ——, 112 S.Ct. 1522, 1532, 118 L.Ed.2d 153 (1992). We think it is quite plain that, while a plaintiff making this type of facial claim need not show how his particular property is affected, for standing purposes he must at the least demonstrate that he was a property owner subject to the statute at the time of its enactment.[8] *See Pennell,* 485 U.S. at 6–7,

---

7. In non-taking contexts, the harm is continuing or does not occur until the statute "is enforced," and consequently the Supreme Court has allowed non-taking challenges to statutes "long after they were enacted." *Levald,* 998 F.2d at 688.

8. We recognize that a landowner may suffer injury when, pursuant to the rent control ordinance, the city denies a rent increase. However, this injury is relevant only in the context of an *as-applied* takings claim. Carson Harbor has raised an as-applied claim but, as we have noted, the claim is not ripe.

108 S.Ct. at 854–55. Carson Harbor lacks standing under each of its asserted facial claims.

## IV

Carson Harbor argues that the district court erred in declining to exercise pendent jurisdiction over its state inverse condemnation claims. The existence of an actionable federal claim is a prerequisite to pendent jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1965). Since there are no actionable federal claims, the district court did not abuse its discretion in declining jurisdiction over the state claims.

## V

The substantive due process claim fails to state a claim upon which relief can be granted, the as-applied takings claims are not ripe, and Carson Harbor lacks standing to pursue a facial takings claim.

**AFFIRMED.**