Bernadine SUITUM, Plaintiff–Appellant,

v.

**TAHOE REGIONAL PLANNING AGENCY, Defendant–Appellee.**

No. 94–15768.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 13, 1995.

Decided April 1, 1996.

William Patterson Cashill, Reno, Nevada, for plaintiff-appellant.

J. Thomas Susich, Vicki E. Hartigan, Crowell, Susich, Owen & Tackes, Carson City, Nevada, for defendant-appellee.

Before: SCHROEDER and ALARCON, Circuit Judges, and PANNER,* District Court Judge.

PANNER, District Judge:

In this 42 U.S.C. § 1983 action, Bernadine Suitum alleges that the Tahoe Regional Planning Agency (TRPA) committed an unconstitutional taking and violated her rights to substantive due process and equal protection when it refused to permit her to build a home on her residential lot in the Lake Tahoe Basin. The district court concluded that Suitum's claims were unripe and granted summary judgment to TRPA. We affirm.

BACKGROUND

I. TRPA

TRPA was created in 1969 by the Tahoe Regional Planning Compact. Pub.L. 91–148, 83 Stat. 360; Cal Gov't Code § 66801; Nev. Rev.Stat. § 277.200 (1969 Compact); *amended*, Pub.L. 96–51, 94 Stat. 3233; Cal Gov't Code § 66801; Nev.Rev.Stat. § 277.200 (1980 Compact). We have previously detailed TRPA's background and it need not be repeated here. *See, e.g., People of Calif. v. Tahoe Regional Planning Agency*, 766 F.2d 1308, 1310–1312 (9th Cir.), *amended*, 775 F.2d 998 (9th Cir.1985).

II. The 1987 Plan

The 1987 Plan, drafted pursuant to the 1980 Compact, governs development of Sui-

---

* Honorable Owen M. Panner, Senior United States District Judge for the District of Oregon, sitting by designation.

tum's property and includes the Individual Parcel Evaluation System (IPES) under which TRPA assigns a numerical score to a residential lot depending on its relative environmental suitability for development. *See Carpenter v. Tahoe Regional Planning Agency,* 804 F.Supp. 1316, 1320 (D.Nev.1992)(listing relevant environmental criteria). TRPA annually establishes a numerical IPES level enabling owners of parcels with IPES scores above the stated level to seek building permits. Owners of parcels with IPES scores below that level may proceed with development only if the level is lowered. *Id.*

The 1987 Plan also creates Stream Environment Zones (SEZs) which generally convey surface water from upland areas into Lake Tahoe and its tributaries. The 1987 Plan allows no new land coverage or other permanent land disturbance within SEZs, except for certain limited public uses.

Finally, the 1987 Plan establishes four criteria that the property owner must meet before building a single-family residence: (1) an IPES score above the numerical level established for development in that calendar year; (2) a residential development right; (3) adequate land coverage; and (4) a residential allocation.

### III. Transfer of Development Rights

The Transfer of Development Rights (TDR) program is "an elaborate system of transfers of development rights[,]" *id.,* which allows for transfers of land coverage, residential development rights, and residential allocations. A property owner may transfer land coverage to a receiving parcel within the same hydrologic zone allowing for construction of a larger project on the receiving parcel. For property within a SEZ, the property owner is allowed to transfer one percent of the total property area. For example, Suitum's property is approximately 18,300 square feet. Because it is located in a SEZ, she is allotted 183 square feet of land coverage to transfer to another parcel.

Subject to county approval and the use and density eligibility of the receiving parcel, residential development rights may be transferred anywhere in the Lake Tahoe Basin.

Property owners may transfer a residential allocation from a parcel with a low IPES score to any parcel with an IPES score above the annual IPES level.

### IV. Development of Suitum's Property Under the 1987 Plan

Suitum purchased the property in 1972 and first attempted development of the lot in 1989 when she obtained a residential allocation from Washoe County for the construction of a house. After a field verification, TRPA initially determined that the property was entirely located in a SEZ and then assigned it a zero IPES score. Suitum appealed. TRPA upheld the IPES score on the basis that the lot was located in a SEZ.

Suitum has one residential development right and 183 square feet of land coverage available to transfer. Although she obtained a residential allocation in 1989, she did not use it that year and it reverted back to the county. Suitum has not applied for another residential allocation. Suitum has not applied to transfer her residential development right or available land coverage under the TDR program.

## DISCUSSION

### I. Standard of Review

A grant of summary judgment is reviewed de novo. *Han v. Mobil Oil Corp.,* 73 F.3d 872, 874 (9th Cir. 1995). Our review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). *Id.* at 875. We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.*

### II. General Taking Claim Standards

 A regulatory taking in violation of the Fifth Amendment, such as that alleged by Suitum, occurs if the regulation "denies an owner economically viable use of his land." *Carson Harbor Village Ltd. v. City of Carson,* 37 F.3d 468, 473 (9th Cir.1994). "[T]he term 'economically viable use' has yet

to be defined with much precision." *Outdoor Systems, Inc. v. City of Mesa,* 997 F.2d 604, 616 (9th Cir.1993). However, "the existence of permissible uses generally determines whether a development restriction denies a property holder the economically viable use of its property." *Id.* The regulation's economic impact and the extent to which it interferes with investment-backed expectations are relevant to the inquiry. *Penn Cent. Transport Co. v. City of New York,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). In sum, "determining whether a regulatory action effects a taking requires complex factual assessments of the purposes and economic effects of government actions[.]" *Levald, Inc. v. City of Palm Desert,* 998 F.2d 680, 685 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 924, 127 L.Ed.2d 217 (1994).

### III. Ripeness Requirements for As–Applied Claims

#### A. Ripeness

■ An "as applied" challenge is "a claim that the particular impact of a government action on a specific piece of property requires the payment of just compensation." *Carson Harbor,* 37 F.3d at 474. We have previously noted that there are "two independent hurdles to the filing of a [regulatory] taking claim in federal court against a state or local government." *Id.* (citing *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 186, 105 S.Ct. 3108, 3116, 87 L.Ed.2d 126 (1985)). Only the first, known as the "final decision requirement," is at issue in this case and it requires Suitum to show that before filing suit, she sought a "final decision from [TRPA] regarding the application of the regulation to the property at issue." *Carson Harbor,* 37 F.3d at 474.[1]

We recently explained that finality "helps the court evaluate whether regulation of the subject property is excessive by identifying the extent of the regulation." *Dodd v. Hood River County,* 59 F.3d 852, 858 (9th Cir.

1995). The court cannot "determine whether a regulation has gone 'too far' unless it knows how far the regulation goes." *Kinzli,* 818 F.2d at 1453 (quoting *MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 348, 106 S.Ct. 2561, 2566, 91 L.Ed.2d 285 (1986)).

We have not previously discussed the effect of a transfer of development rights on a regulatory taking claim. However, Judge Fletcher has made clear, in dicta, that she would require pursuit of transfer of development rights before a regulatory taking claim against TRPA could be considered ripe. *Tahoe–Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency,* 911 F.2d 1331, 1344 n. 3 (9th Cir.1990)(Fletcher, J. concurring), *cert. denied,* 499 U.S. 943, 111 S.Ct. 1404, 113 L.Ed.2d 459 (1991). As explained below, we agree with Judge Fletcher, and the district court, and conclude that Suitum must apply for the transfer of her development rights through the TDR program before her claim is ripe.

■ Without an application for the transfer of development rights, TRPA is foreclosed from determining the extent of the use of Suitum's property. *Dodd,* 59 F.3d at 858. By failing to apply to the TDR program, Suitum denies TRPA the ability to grant a "different form[ ] of relief ... which might abate the alleged taking." *Southern Pac. Transp. Co. v. City of Los Angeles,* 922 F.2d 498, 503 (9th Cir.), *cert. denied,* 502 U.S. 943, 112 S.Ct. 382, 116 L.Ed.2d 333 (1990).

Without pursuit of the transfer of development rights, we cannot know whether the regulations have gone too far because at this point, no one knows how far the regulations have gone. *MacDonald,* 477 U.S. at 348, 106 S.Ct. at 2565. Without attempting to transfer the rights she currently possesses, Suitum cannot know the "nature and extent of permitted development[,]" *Kinzli,* 818 F.2d at 1453, and thus cannot know the regulations' full economic impact or the degree of

---

1. These ripeness requirements are equally applicable to the due process and equal protection claims. *See Kawaoka v. City of Arroyo Grande,* 17 F.3d 1227, 1231–32 (9th Cir.) (substantive due process), *cert. denied,* —— U.S. ——, 115 S.Ct. 193, 130 L.Ed.2d 125 (1994); *Kinzli v. City of Santa Cruz,* 818 F.2d 1449, 1455–56 (9th Cir.) (equal protection and substantive due process), *amended,* 830 F.2d 968 (9th Cir.1987), *cert. denied,* 484 U.S. 1043, 108 S.Ct. 775, 98 L.Ed.2d 861 (1988).

their interference with her reasonable investment-backed expectations, two critical components of a regulatory taking claim analysis. *Youpee v. Babbitt,* 67 F.3d 194, 197 (9th Cir.1995).

Although in the more typical scenario a plaintiff may face a municipal planning board which reviews modified development plans or requests for variances, here, the TDR program effects the same purpose: facilitating alternative uses of the property. We recognize that TRPA's regulatory scheme is unique and conclude that within that scheme, transfer of development rights is a "use" of SEZ property. The key inquiry is whether the property retains "any reasonable beneficial use[.]" *MacDonald,* 477 U.S. at 349, 106 S.Ct. at 2566. That the possible uses under TRPA's unusual procedure are transfers of development rights *from* Suitum's property rather than, for example, reapplications of development plans *for* her property, is immaterial.

## B. Futility Exception

██ We recognize a "limited" futility exception to the ripeness doctrine. *Del Monte Dunes at Monterey, Ltd. v. City of Monterey,* 920 F.2d 1496, 1501 (9th Cir.1990). Generally, the final decision requirement is excused if the plaintiff shows that it would be an "idle and futile act" or that the application procedures are unfair. *Kinzli,* 818 F.2d at 1454, 1455; *Del Monte Dunes,* 920 F.2d at 1496 (plaintiff's burden).

Suitum argues that her claims are ripe because the TDR program is a "ruse, a sham." She contends that the TDR program has produced no sales and that her property has no marketable development rights. In support of her argument, she relies on the affidavit of her expert, Paul Kaleta, a former TRPA staff member who is now a private consultant and who is familiar with TRPA ordinances and application procedures for transfer of development commodities.

In support of its contention that pursuit of transfer of development rights under the TDR program is meaningful, TRPA relies on the affidavit of Certified Appraiser Stephen R. Johnson who has twenty-four years of appraising experience in the Lake Tahoe area. He attests that Suitum's development rights have value.

## 1. Exclusion of Kaleta's Affidavit

The district court concluded that there is significant value in the transfer of residential development rights and transfer of residential allocations. In reaching this conclusion, the district court disregarded Kaleta's affidavit and relied only on the valuation evidence submitted by TRPA. We conclude that the district court did not abuse its discretion in excluding Kaleta's affidavit from the court's ripeness analysis.

██ We review "a district court's decision to admit or exclude expert testimony for an abuse of discretion." *Beech Aircraft Corp. v. United States,* 51 F.3d 834, 841 (9th Cir.1995). "Generally, a district court abuses its discretion when it bases its decision on an erroneous view of the law or a clearly erroneous view of the facts." *Id.*

██ Suitum contends that Kaleta's experience as a TRPA regulator qualifies him to testify as to the value of her development rights. To offer an expert opinion, Kaleta must possess the required knowledge, skill, experience, training, or education. Fed. R.Evid. 702. The specific issue on which expert testimony is relevant is the value of Suitum's transfer of development rights. It was not a clear error of judgment for the district court to conclude that a licensed appraiser or someone with demonstrated experience in *valuation* was the proper expert on this issue. Kaleta is not an appraiser either by experience, education, or other training. His experience in facilitating property owners in TDR program transfers is not equivalent to experience in assigning a market value to TRPA development rights. The district court's exclusion of Kaleta's affidavit was not an abuse of discretion.

██ TRPA's evidence shows that without an allocation right, Suitum's development rights are valued from $10,000 to $21,500 or more. With an allocation right, the value increases by approximately $30,000. Given that Suitum's development rights possess some significant value, Suitum fails to meet

**364**

her burden of showing that participation in the TDR program is futile. Thus, her application to the TDR program is required to present ripe taking, equal protection, and substantive due process claims to the court.

█ Finally, we reject Suitum's suggestion made at oral argument that because the TDR program is not designed to give her just compensation, she need not participate in it to demonstrate ripeness. In the regulatory taking analysis, a taking must be established before the question of just compensation arises. The object of the final decision requirement is to determine whether a taking has occurred at all, independent of any compensation issue, by examining the extent of the regulations' economic impact and interference.

█ Pursuit of a final decision in general, and application to the TDR program in particular, may mitigate the regulations' economic effect and result in a diminution in value rather than a more severe economic impact. The imposition of regulatory ordinances that merely diminish the value of property does not constitute a taking. *See, e.g., William C. Haas & Co., Inc. v. City and County of San Francisco*, 605 F.2d 1117, 1120 (9th Cir.1979)(diminution of property value from $2 million to $100,000 not a taking), *cert. denied*, 445 U.S. 928, 100 S.Ct. 1315, 63 L.Ed.2d 761 (1980). Therefore, compliance with the final decision process is required to establish a ripe claim, even when it is apparent that the process will not provide the same value that the landowner may have had absent the impacting regulations. Because Suitum failed to apply for transfers of development rights through the TDR program and fails to demonstrate that such an application would be futile, her claims are unripe for adjudication.

IV. TRPA's Request for Attorney's Fees on Appeal

█ Pursuant to 42 U.S.C. § 1988, TRPA asks for attorneys' fees for defending this appeal. We may award attorneys' fees under section 1988 to the prevailing party for fees on appeal. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1213 (9th Cir.1986), *amended* 808 F.2d 1373 (9th Cir.1987). We

reject TRPA's request for fees. Suitum's claim was not frivolous or groundless and fees are inappropriate under the circumstances. *See Hughes v. Rowe*, 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980) (court may award section 1988 fees when the claim is "frivolous, unreasonable, or groundless").

AFFIRMED.