116 F.3d 483
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Margaret DIFRANK, a married woman, Plaintiff-Appellant/Cross-Appellee,
v.
Stephen D. NEELY, individually and in his capacity as Pima
County Attorney, Defendant-Appellee/Cross-Appellant.
 Nos. 96-15503, 96-15547.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 7, 1997.
Decided June 11, 1997.
 
 Appeal from the United States District Court for the District of Arizona, No. CV-94-00773-RMB; Richard M. Bilby, Chief Judge, Presiding.
 Before: PREGERSON, NOONAN, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Plaintiff Margaret DiFrank appeals the district court's grant of summary judgment in favor of defendant Stephen J. Neely, in his capacity as County Attorney of Pima County. DiFrank worked at the County Attorney's Office, and claims that she suffered a breach of her employment contract, sexual harassment in violation of Arizona law, and intentional infliction of emotional distress. DiFrank requests her attorney's fees on appeal.
 
 
 3
 Neely appeals the district court's denial of his requests for attorney's fees under federal and state statutes. Neely also requests attorney's fees on appeal.
 
 
 4
 The facts are well known to the parties, and we will not repeat them here.
 
 STANDARD OF REVIEW
 
 5
 We review a grant of summary judgment de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, 116 S.Ct. 1261 (1996). We must determine, viewing the evidence in the light most favorable to DiFrank, whether any genuine issue of material fact exists and whether the district court correctly applied the relevant substantive law. Suitum v. Tahoe Regional Planning Agency, 80 F.3d 359, 361 (9th Cir.), cert. granted, 117 S.Ct. 293 (1996).
 
 DISCUSSION
 
 6
 A. DiFrank's Breach of Contract Claim.
 
 
 7
 Both parties agree that the Pima County Merit System Rules and Personnel Policies ("PCMS Rules") constitute DiFrank's employment contract. On appeal, DiFrank claims that Neely[1] breached her employment contract by: (1) failing to give her an equity pay adjustment promised to all of the old Management Team members, (2) failing to prepare a Special Performance Evaluation Report at the end of DiFrank's six-month observation period, (3) failing to give DiFrank sufficient notice before placing her on a six-week Administrative Leave with pay, (4) formally punishing DiFrank twice for the same misconduct, (5) promoting Varelas improperly though the use of a non-competitive process, and (6) reducing DiFrank's duties to the point that she was reclassified into a lower salary grade. We conclude that the district court erred in granting summary judgment because DiFrank presented evidence to support her claim that her employment contract may have been breached.
 
 1. The Equity Pay Adjustment
 
 8
 DiFrank claims that Neely breached her employment contract by failing to give her an equity pay adjustment that had been promised to the whole Management Team to make their salaries more competitive in the labor market. The district court found that the purpose of the equity pay adjustment was to compensate the members of the "new" Management Team for additional responsibilities they assumed after Sharon Hekman's departure. The district court also found that DiFrank's alleged performance problems kept her off of the "new" Management Team and made her ineligible for the equity pay adjustment. Based on these findings, the district court held that the County's failure to give DiFrank the equity pay adjustment did not breach her employment contract.
 
 
 9
 There was a genuine issue of fact as to whether the sole purpose of the equity pay adjustment was to bring the salaries of "new" Management Team members into line with their added responsibilities. PCMS Rule 2.1 declares that the salary of an employee should reflect both "the responsibility and difficulty of the work and [a] competitive position with respect to the labor market." Thus, PCMS Rule 2.1 suggests that another purpose of the equity pay adjustment was to raise salaries to keep them competitive in Pima County.
 
 
 10
 Neely offered three pieces of evidence to support his view that the equity pay adjustment was not intended to make the salaries of the Management Team competitive in the labor market. First, Neely submitted his own affidavit as proof that the equity pay adjustment was only intended to give "new" Management Team members extra pay for their increased responsibilities after Sharon Hekman's departure. Second, Neely presented Susan Agrillo's memorandum stating that DiFrank should not be promoted to Program Manager due to client and co-worker complaints about DiFrank's performance. Third, Neely pointed to Hekman's affidavit stating that Hekman had recommended that Varelas instead of DiFrank become Program Manager.
 
 
 11
 Agrillo's memorandum and Hekman's affidavit could be read to imply merely that DiFrank was not promoted to Program Manager. Therefore, Neely's affidavit is the only evidence supporting his contention that the equity pay adjustment was intended for "new" Management Team members.
 
 
 12
 DiFrank, on the other hand, presented more than just her personal affidavit to support her claim that the equity pay adjustment's purpose was to make the Management Team members' salaries more competitive in the labor market. DiFrank pointed to a February 19, 1993, memorandum that was signed by each member of the Management Team. The memorandum requested an "equity adjustment in salary according to the market ... retroactive to January 1, 1993." This memo does not condition the equity pay adjustment to the formation of a "new" Management Team, to the creation of additional responsibilities, or to the departure of Sharon Hekman. In addition, the fact that all of the Management Team members, including DiFrank, signed this memorandum further supports DiFrank's argument that the equity pay adjustment was intended to make the salaries of the Management Team members more competitive in the labor market.
 
 
 13
 In conclusion, DiFrank's affidavit and the memo dated February 19, 1993, suffice to create a triable issue of material fact about the purpose of the equity pay adjustment.
 
 
 14
 2. The Special Performance Evaluation Report
 
 
 15
 PCMS Rule 12.5(C) specifically requires that "[a]t the end of the Special Observation Period, the employee's supervisor shall prepare a Special Performance Evaluation Report." (emphasis added). DiFrank never received a Special Performance Evaluation Report ("SPER"). There is a genuine issue of material fact concerning whether Varelas's failure to provide a SPER materially breached the terms of DiFrank's employment contract.
 
 3. The Administrative Leave Notice
 
 16
 PCMS Rule 12.2(E) governs administrative leaves. It declares that "any permanent employee may be placed on administrative leave with pay pursuant to [PCMS Rule] 5-107." In turn, PCMS Rule 5-107 provides that "[the notification of Administrative Leave] shall contain the specific reason(s) for the leave in sufficient detail to inform the employee of the reason(s) for the action."
 
 
 17
 DiFrank's Administrative Leave notice merely stated that DiFrank was suspended pending an investigation into her "serious job performance deficiencies," but did not explain what DiFrank's specific deficiencies were. In her Statement of Facts submitted to the district court in opposition to Neely's motion for summary judgment, DiFrank submitted copies of several e-mails she exchanged with Varelas. The e-mails show that DiFrank repeatedly asked Varelas to provide her with adequate notice of her administrative leave, even going so far as to tell Varelas to "[p]lease review [PCMS Rule] 5-107." (emphasis added).
 
 
 18
 PCMS Rule 5-107 clearly requires that a Notice of Administrative Leave contain "sufficient detail to inform the employee of the reason(s) for the action." DiFrank's Notice of Administrative Leave did not contain any details at all. Instead, it simply informed DiFrank that she was being put on administrative leave pending an investigation into her "serious job performance deficiencies." DiFrank established a genuine issue of material fact as to whether the notice materially breached PCMS Rule 5-107.
 
 4. DiFrank's Double Punishment
 
 19
 DiFrank argued to the district court that she was repeatedly disciplined for her erroneous handling of Rojas's claim of sexual harassment. PCMS Rules 12.1(A) and (C) state:
 
 
 20
 A disciplinary action is an action taken to correct inappropriate performance or other work-related behavior. The degree of disciplinary action shall relate to the gravity of the improper performance [ ] and the past performance and conduct of the employee.... Counseling and other supervisory actions to improve conduct and performance should be used whenever possible before taking formal disciplinary action.
 
 
 21
 DiFrank incorrectly assumes that the use of multiple punishments violates PCMS Rule 12.1. First, PCMS Rule 12.1(C) specifically contemplates the use of multiple informal actions to correct employee conduct. Moreover, more than one formal disciplinary action may be taken to correct an employee's misconduct. See PCMS Rule 12.1(B) ("Department Directors may use progressive discipline to correct employee problem performance."). Accordingly, DiFrank does not have a breach of contract claim based on her theory that she wrongfully received multiple punishments.
 
 
 22
 5. The Alleged Improper Promotion of Varelas
 
 
 23
 DiFrank contends that the appointment of Varelas to Program Manager was a promotion because Varelas received a pay adjustment above the amount requested in the February 19, 1993, memorandum on adjustments, and because Varelas began to supervise DiFrank. DiFrank argues that Varelas was wrongfully promoted without a competitive process.
 
 
 24
 According to PCMS Rule 8.1(B), "[p]romotions shall be competitive and the selection made from a Certificate of Eligibles." PCMS Rule 1.50 defines a promotion as "a change from a position in one classification to a position in another classification having a higher salary grade."
 
 
 25
 PCMS Rule 1.55, on the other hand, defines a reassignment as a "competitive or non-competitive change in the assignment of an employee from one position to another of the same classification and salary grade." Unlike promotions, reassignments do not have to be awarded on a competitive basis because a "Department Director has the authority to make competitive or non-competitive reassignments within his department." PCMS Rule 8.4.
 
 
 26
 DiFrank concedes that Varelas was not put into a new position "in another classification having a higher salary grade." Therefore, the district court correctly concluded that no promotion had occurred and that the non-competitive reassignment of Varelas did not breach DiFrank's employment contract.
 
 
 27
 6. DiFrank's Constructive Reclassification and Improper Reclassification Arguments.
 
 
 28
 DiFrank contends that the gradual reduction in her duties by Varelas and Neely resulted in her constructive reclassification and breached her employment contract. DiFrank also contends on appeal that the district court erred in dismissing her breach of contract claim when she was not given the proper options due to all reclassified employees.
 
 
 29
 The district court ruled against DiFrank on this claim because DiFrank pointed to no "contractual provision that creates a right to any certain job responsibilities or duties." The district court was correct because no such provision exists in the PCMS rules.
 
 
 30
 B. DiFranks's other claims, Neely's attorney's fees, and attorney's fees on appeal
 
 
 31
 We affirm the district court's grant of summary judgment on DiFrank's other claims for the reasons stated in the district court's order granting summary judgment. We affirm the district court's denial of Neely's motion for attorneys fees. We also deny both DiFrank's and Neely's motion for attorneys fees on appeal.
 
 CONCLUSION
 
 32
 We reverse the district court's grant of summary judgment on DiFrank's breach of contract claim. We affirm the district court's grant of summary judgment on all other claims brought by DiFrank. We affirm the district court's denial of Neely's motion for attorney's fees. We deny DiFrank's and Neely's motion for attorney's fees on appeal. We remand to the district court for further proceedings consistent with this disposition.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 At oral argument, the County expressly waived any claim that the breach of contract claim could lie only against the County and not Neely