# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2227

_____

Sheila Fields,                    *
                                  *
        Appellant,                *
                                  *   Appeal from the United States
    v.                            *   District Court for the Eastern
                                  *   District of Arkansas.
Shelter Mutual Insurance Company, *
                                  *
        Appellee.                 *

_____

Submitted: January 14, 2008
Filed: March 25, 2008

_____

Before BYE, BEAM, and GRUENDER, Circuit Judges.

_____

BEAM, Circuit Judge.

Sheila Fields, an African-American, brought a race-discrimination suit against her former employer, Shelter Mutual Insurance, Company (Shelter), pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Fields alleged that Shelter treated her differently than its Caucasian employees with respect to her pay. Shelter moved for summary judgment on both claims, and the district court[1] granted Shelter's motion. In doing so, the district court held that Fields failed to establish a prima facie

_____

[1]The Honorable G. Thomas Eisele, United States District Judge for the Eastern District of Arkansas.

case of race discrimination because she failed to adduce evidence that Shelter treated similarly situated employees differently. Fields now appeals. We affirm.

## I.    BACKGROUND

In 1999, after working seven years at State Farm Insurance Company, Fields applied for work at Shelter. Shelter is a regional insurance company with offices in fourteen states, and branches located in several cities. Fields started working at Shelter on July 6, 1999, as an insurance adjuster in its Little Rock, Arkansas, office. She earned $2,736.00 a month. Shelter determined Fields' starting salary according to its Salary Administration Program. Under this program, an employee's starting salary is determined by a chart that lists the salary range for each position at Shelter. For example, an E4 Claims Supervisor hired in 2003 could earn between $3,469.00 and $5,541.00 per month. Fields never complained about her starting salary.

Fields received periodic raises and promotions throughout her career at Shelter. She received her first raise on February 1, 2000. Her next raise came exactly one year later, on February 1, 2001, resulting in a monthly salary of $3,002.08. On August 1, 2001, approximately two years after Fields started working at Shelter, Shelter promoted her to Senior Claims Adjuster. As a Senior Claims Adjuster, Fields received a monthly salary of $3,302.29.

Fields argues that Tom Klenke, a Caucasian male, discriminated against her. Shelter hired Klenke on May 1, 2002, to serve as branch manager of the Little Rock claims office. After being at Shelter for approximately a month and a half, Klenke promoted Fields to E4 Claims Supervisor. Along with this promotion, Fields received a 9.99 percent raise. Pursuant to Shelter's promotional-increase policy, the maximum raise available was ten percent. After this raise, Fields' monthly salary was $3,632.20. Approximately six months later, in January 2003, Klenke conducted a performance evaluation of Fields and gave her a four ("Meets Expectations") rating and a 2.75

percent raise.[2]  In July 2003, only one year after Klenke promoted Fields to E4 Claims Supervisor, he promoted her to E5 Claims Supervisor and, this time, gave her the highest promotion raise allowed under company policy–ten percent.  As an E5 Claims Supervisor, Fields made $4,105.28 per month.

Fields received a three rating on each of her performance evaluations as an E5 Claims Supervisor.  Nevertheless, she still received a merit-based raise after each evaluation.  For instance, after her last performance evaluation at Shelter, on July 1, 2005, she received a merit-based raise of 4.5 percent, resulting in a new monthly salary of $4,439.87.

In 2004, Fields sought an "equity raise" because she felt that newly-hired supervisors received higher salaries than she did.  Fields' request was reviewed by no less than three persons, who, after reviewing her salary, determined that there was no need for an equity raise.   As part of this review, Charles Allen, Shelter's Director of Compensation, prepared a report on Claims Supervisors' salaries.  Allen concluded that some of Shelter's Claims Supervisors were hired directly into supervisor positions, some were hired pursuant to the company's new policy of paying outside hires at higher salaries in order to attract the best talent, and that employees starting at Shelter below the supervisor level could receive lower salaries than employees hired into a supervisor position.

On February 10, 2005, Fields filed a Charge of Discrimination with the Equal Employment Opportunity Commission, alleging discrimination based upon race and

---

[2]Shelter maintains a five-level performance-evaluation system. This evaluation system changed, effective January 1, 2003.  Under the 2002 system, which Klenke evaluated Fields, a performance evaluation of five ("Exceeds Performance") was the highest rating, and, accordingly, carried the highest merit-based raise.  In contrast, a rating of one ("Does Not Meet Expectations") was Shelter's lowest rating.  If an employee received a rating of one, she was not entitled to a merit-based raise.

sex. The EEOC issued Fields a right-to-sue letter on September 28, 2005. On October 10, 2005, Fields resigned from Shelter. Two and a half months later, on December 28, 2005, Fields filed suit in federal district court, alleging racial discrimination under Title VII. Fields later amended her complaint to add a claim under 42 U.S.C. § 1981.

After Shelter filed its answer, it moved for summary judgment on all of Fields' claims, arguing, inter alia, that Fields could not establish a prima facie case of discrimination. In an effort to establish her prima facie case, Fields argued that the following Caucasian Claims Supervisors at Shelter were similarly situated to her: Mary Schinbeckler, Hoil Henderson, Terrell Martin, Steven Wanner, Teresa Hutchinson, and Brandon Harris. Regarding these employees, Fields argued the following.

With the exception of Brandon Harris, who worked in Shelter's Tulsa, Oklahoma, office, these Claim Supervisors worked at Shelter's Little Rock, Arkansas, office under the direction of Tom Klenke.

Shelter hired Mary Schinbeckler as an E4 Claims Supervisor, on June 16, 2003. Schinbeckler's starting salary was $4,350.00 a month. Schinbeckler worked at State Farm for approximately eight years before going to Shelter. When Schinbeckler left State Farm, she earned $66,000.00 per year. Schinbeckler was promoted to E5 Claims Supervisor. As an E5 Claims Supervisor, Schinbeckler earned $5,011.57 per month.

Hoil Henderson started working at Shelter's Little Rock claims office on March 2, 2004. Shelter hired Henderson to work as an E4 Claims Supervisor, at a monthly salary of $3,950.00. Henderson had approximately fourteen years experience in the insurance business before going to work at Shelter. Shelter promoted Henderson to E5 Claims Supervisor. In this position, Henderson earned $4,496.80 per month.

-4-

In May 2003, Shelter hired Steven Wanner as a Claims Adjuster. Wanner's starting salary was $3,053.00. Shelter later promoted Wanner to E4 Claims Supervisor, and paid him a monthly salary of $3,638.00. Wanner was also promoted to E5 Claims Supervisor, with a monthly salary of $4,141.50.

Teresa Hutchinson started working at Shelter as a clerk typist in 1983, at a rate of $2.43 per hour. Throughout her tenure at Shelter, she was promoted to Senior Claims Adjuster, E4 Claims Supervisor, and E5 Claims Supervisor. Hutchinson's promotion to E5 Claims Supervisor resulted in a monthly salary of $4,572.00.

Shelter hired Terrell Martin on March 12, 1990. Shelter promoted Martin to E4 Claims Supervisor on February 1, 2003. In this position, Martin earned $4,463.93 a month.

Brandon Harris, who did not work in the Little Rock, Arkansas, office, started working at Shelter on March 15, 1999. Shelter hired Harris as a Pool Adjuster, and later promoted him to E4 Claims Supervisor and E5 Claims Supervisor. As an E5 Claims Supervisor, Harris earned $4,442.32 a month.

The district court granted Shelter's motion for summary judgment, concluding that the six Claims Supervisors Fields highlighted were not similarly situated, and, as a result, Fields failed to produce evidence that Shelter treated similarly situated employees differently. Fields then filed this appeal.

II.    DISCUSSION

We review a district court's grant of summary judgment de novo. Cherry v. Ritenour Sch. Dist., 361 F.3d 474, 478 (8th Cir. 2004). In doing so, we apply the same standard as the district court, viewing the evidence in the light most favorable to the nonmoving party and giving that party the benefit of all inferences that may reasonably be drawn. Id. A movant is entitled to summary judgment "if the

pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

In race discrimination cases,[3] a plaintiff may survive a defendant's motion for summary judgment in one of two ways. The plaintiff may present admissible evidence directly indicating unlawful discrimination, that is, evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action. Russell v. City of Kan. City, Mo., 414 F.3d 863, 866 (8th Cir. 2005). Alternatively, if the plaintiff lacks such evidence of discrimination, she may survive the defendant's motion for summary judgment by creating an inference of unlawful discrimination under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).

Under the McDonnell Douglas framework, the plaintiff bears the burden of establishing a prima facie case of discrimination.[4] McGinnis v. Union Pac. R.R., 496 F.3d 868, 873 (8th Cir. 2007). To meet her burden, a plaintiff must show the following: (1) that she is a member of a protected class; (2) that she was meeting her employer's legitimate job expectations; (3) that she suffered an adverse employment action; and (4) that similarly situated employees outside the protected class were treated differently. Carpenter v. Con-Way Cent. Express, Inc., 481 F.3d 611, 616 (8th Cir. 2007).

---

[3]Because Fields' Title VII and § 1981 claims "set forth parallel, substantially identical, legal theories of recovery," we apply the same analysis to both. Kim v. Nash Finch Co., 123 F.3d 1046, 1063 (8th Cir. 1997).

[4]This prima facie case establishes a rebuttable presumption of unlawful discrimination under the procedures outlined in McDonnell Douglas.

In this case, the parties do not dispute that <u>McDonnell Douglas'</u> tripartite burden-shifting test applies; however, only the fourth prong of that test–whether similarly situated employees outside the plaintiff's protected class were treated differently–is at issue here. The test is rigorous and requires that the other employees be similarly situated in all relevant aspects before the plaintiff can introduce evidence comparing herself to the other employees. <u>Cronquist v. City of Minneapolis</u>, 237 F.3d 920, 928 (8th Cir. 2001); <u>cf.</u> <u>Rodgers v. U.S. Bank, N.A.</u>, 417 F.3d 845, 851 (8th Cir. 2005) (discussing the two approaches taken by this circuit in determining whether two persons are similarly situated at the prima facie stage and adopting the "low threshold" test, which only requires that the employees are involved in or accused of the same or similar conduct and are disciplined in different ways).

Here, the district court properly concluded that Fields failed to produce evidence that Shelter treated similarly situated individuals differently. Each of the six employees Fields pointed to below and, again points to on appeal, is, for different reasons, not similarly situated to Fields. Fields first points to employees Mary Schinbeckler and Hoil Henderson. Shelter hired both Schinbeckler and Henderson directly from a competitor into the position of E4 Claims Supervisor. And both were hired pursuant to Shelter's new policy of paying outside hires higher salaries than those internally promoted. In contrast, Fields was hired as a Claims Adjuster and promoted through the ranks of Shelter to E4 Claims Supervisor. Shelter also hired Fields before it adopted its outside-hire policy. In sum, Schinbeckler and Henderson are not similarly situated to Fields in all relevant respects.

Next, Fields argues that Teresa Hutchinson and Terry Martin are similarly situated. Hutchinson worked for Shelter approximately sixteen years more than Fields. Martin worked at Shelter nearly nine years before Shelter hired Fields. Because Hutchinson and Martin had been with Shelter for a longer period, they had received more salary adjustments. Hutchinson and Martin also had significantly more experience than Fields at Shelter. Accordingly, they are not similarly situated to Fields.

Fields also points to Brandon Harris.  Harris worked in Shelter's Tulsa, Oklahoma, office and had a different supervisor than Fields.  Thus, Harris and Fields reported to different decision-makers, and "[w]hen different decision-makers are involved, two decisions are rarely similarly situated in all relevant respects." Stanback v. Best Diversified Prods., Inc., 180 F.3d 903, 910 (8th Cir. 1999).  This case is no exception.

Lastly, Fields argues that Steven Wanner is similarly situated.  Shelter hired Wanner some four years after it hired Fields.  Furthermore, Shelter paid Wanner *less* as an E5 Claims Supervisor than it did Fields.  Thus, even if Wanner was similarly situated to Fields, Fields suffered no adverse employment decision relative to Wanner.  To be sure, although Wanner and Fields were treated differently, it was Wanner whom Shelter paid less, not Fields.  See Sowell v. Alumina Ceramics, Inc., 251 F.3d 678, 684 (8th Cir. 2001) (holding that the plaintiff failed to establish a prima facie case of sexual discrimination under Title VII when the "evidence establishe[d] that throughout her employment in the tool room she was paid the same as, or more than, at least some male tool makers").

In sum, Fields failed to produce evidence that Shelter treated similarly situated Claims Supervisors differently than her with respect to her pay. Five Claims Supervisors were clearly not similarly situated to Fields, and Fields faced no discrimination relative to Wanner, who earned less than Fields.  As a result, the district court did not err in granting Shelter's motion for summary judgment.

## III.  CONCLUSION

For the foregoing reasons, we affirm the district court.

_____