# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EQUITY LIFESTYLE PROPERTIES, INC.,
f/k/a MANUFACTURED HOME
COMMUNITIES, INC., d/b/a SEA OAKS
MANUFACTURED HOME COMMUNITY,
            *Plaintiff-Appellant,*

                    v.

COUNTY OF SAN LUIS OBISPO;
COUNTY OF SAN LUIS OBISPO RENT
REVIEW BOARD; SAN LUIS OBISPO
BOARD OF SUPERVISORS,
            *Defendants-Appellees,*

                    and

ELIZABETH CISNEROS; MARY JANE
TATE; FRANK GRECO; IDA GRECO;
ROBERT MEYER; MARGARET MEYER;
ANNE MEYER; LOUISE MCMANUS;
LAVERNE JONES; WILLIAM SPURRIER;
JUNE SPURRIER,
            *Real Parties in Interest.*

No. 05-55406

D.C. No.
CV-03-00037-TJH

ORDER AND
OPINION

Appeal from the United States District Court
for the Central District of California
Terry J. Hatter, Chief District Judge, Presiding

Argued February 7, 2007
Submission Deferred February 12, 2007
Submitted September 11, 2007
Opinion Filed September 17, 2007
Pasadena, California

Opinion Withdrawn November 25, 2008;
New Opinion Filed November 25, 2008

15735

Before: Cynthia Holcomb Hall, Diarmuid F. O'Scannlain, and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge O'Scannlain

## COUNSEL

David J. Bradford, Jenner & Block LLP, Chicago, Illinois, argued the cause for the petitioner/plaintiff-appellants; Edith R. Matthai, Steven S. Fleishman, Robie & Matthai APC, Los Angeles, California, and Elliot L. Bien, Bien & Summers LLP, Novato, California, were on the briefs.

Henry E. Heater, Endeman, Lincoln, Turek & Heater LLP, argued the cause for the respondents-appellees; Timothy McNulty, San Luis Obispo County Counsel, San Luis Obispo, California, and Donald R. Lincoln and Linda B. Reich, Endeman, Lincoln, Turek & Heater LLP, San Diego, California, were on the briefs.

## ORDER

The opinion filed in this case on September 17, 2007 is withdrawn. A new opinion is filed contemporaneously with the filing of this order.

The panel has voted unanimously to deny the petition for rehearing. Judges O'Scannlain and Callahan have voted to deny the petition for rehearing en banc. Judge Hall recommended that the petition for rehearing en banc be denied.

The full court has been advised of the petition for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing and the petition for rehearing en banc are DENIED. Subsequent petitions for rehearing and rehearing en banc may be filed.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must determine whether a municipal rent control ordinance survives a due process and equal protection challenge or requires payment of compensation as a government taking.

I

A

On June 5, 1984, the County of San Luis Obispo adopted a Mobilehome Rent Stabilization Ordinance ("Ordinance") pursuant to a voter initiative.

> [The Ordinance sought] to protect the owners and occupiers of mobilehomes from unreasonable rent increases, while at the same time recognizing the need of park owners to receive a suitable profit on their property with rental income sufficient to cover increases in the costs of repair, insurance, maintenance, utilities, employee services, additional amenities, and other costs of operation, and to receive a fair return on their property.

County of San Luis Obispo, Cal., Code § 25.01.010(c). The Ordinance exempted "[t]enancies covered by leases or contracts which provide for more than a month-to-month tenancy, but only for the duration of such lease or contract." *Id.* § 25.03.010. The Ordinance established a Mobilehome Rent Review Board ("Board") consisting of members "not connected with the mobilehome rental housing industry for their personal gain." *Id.* § 25.04.010. The Board's powers and duties included the right "[t]o increase or decrease maximum rents upon completion of its hearings and investigations." *Id.* § 25.05.010. The Ordinance prescribed a base rent at "the monthly space rent as of December 31, 1982," allowed a

"maximum monthly space rent [to] be increased no more than once a year by an increase over the then existing space rent equal to sixty percent of the cost of living increase," and forbade owners to "demand, accept or retain a rent . . . in excess of the maximum permitted by this chapter." *Id.* §§ 25.06.010(a)(1), (b), (d). Upon a transfer of mobilehome ownership, the Ordinance allowed a rent increase of up to 10% of the prior monthly rent. *Id.* § 25.06.011. In addition, the Ordinance included a "hardship exception" so that the Board could approve rent increases above the normal maximum in the case of extraordinary expenditures and costs that would preclude "a just and reasonable return on [the] property." *Id.* § 25.07.010.

B

Manufactured Home Communities, Inc. ("MHC"), now known as Equity Lifestyle Properties, Inc., is a public company. MHC created an Operating Limited Partnership ("OLP"), which has acquired several mobilehome communities and resorts from original owners in exchange for limited partnership assets. The partners of OLP, including MHC and its limited partners, receive revenue from these assets.[1]

In 1997, acting on behalf of OLP, MHC purchased the Sea Oaks Manufactured Home Community in Los Osos, California ("the Park"). OLP maintains title ownership. MHC subsequently sought to impose rent increases on nine of the 126 mobilehome lots in the Park.[2]

On March 26, 2002, MHC (holding itself out as the park-owner) gave notice to the Park tenants that rent in the nine lots would increase by an average 185%. The tenants protested that the Ordinance barred such rent increases, but MHC noted that they had signed standard-form 12-month rental

---

[1]MHC is also the OLP's general partner.

[2]The tenants of the nine lots are the "Real Parties in Interest."

agreements and stated that the Ordinance did not apply to such leases. *See* County of San Luis Obispo, Cal., Code § 25.03.010 (exempting "[t]enancies covered by leases or contracts which provide for more than a month-to-month tenancy . . . for the duration of such lease or contract").

To settle the dispute over the 185% rent increases, MHC wrote the Board on March 29, 2002, asking for verification that the Ordinance did not apply the nine lots at issue. On May 22, 2002, the tenants in turn requested a hearing as to whether the increases violated the Ordinance. They explained that the previous Park owner had informed them that the leases would be subject to the Ordinance and they relied on that information in renewing their leases.

The Board accepted MHC's representation that it was the Park owner and gave notice of hearings, which it conducted on June 3, July 15, and August 23, 2002. At the hearings, the Board allowed both sides to present witnesses and to submit limitless materials, but barred any cross-examination. The Board concluded that MHC's "twelve-month" agreements were in fact month-to-month agreements covered by the rent control Ordinance, for they included an undefined rent term and permitted rent increases anytime upon a 90-day notice.[3] MHC appealed to the San Luis Obispo County Board of Supervisors on September 5, 2002, which affirmed the Board's decision on October 8, 2002.

C

On January 3, 2003, MHC filed a Petition for Writ of Administrative Mandamus in the Central District of California, based on federal question and diversity jurisdiction. *See* 28 U.S.C. §§ 1331, 1332, 1343(a)(3). The petition asserted

---

[3]The Board noted the fact that the prior and current resident managers of the nine lots had treated the 12-month agreements as being subject to the Ordinance.

federal claims under 42 U.S.C. § 1983 as well as California law claims "within the pendent and/or supplemental jurisdiction of th[e] court." *See* 28 U.S.C. § 1367. The petition challenged the administrative ruling, and the Respondents' failure "to declare their own ordinance unconstitutional under the Fifth and Fourteenth Amendments."

MHC subsequently filed a First Amended Complaint for:

(1)   Petition for Writ of Administrative Mandamus[4]

(2)   Violation of the Fifth Amendment of the United States Constitution (Takings Claim)[5]

(3)   Violation of the Fourteenth Amendment of the United States Constitution (Substantive Due Process)[6]

(4)   Violation of the Fourteenth Amendment to the United States Constitution (Equal Protection)[7]

(5)   Declaratory Relief[8]

---

[4]MHC sought the writ under Cal. Code Civ. P. § 1094.5, challenging the Board for acting in excess of its jurisdiction, failing to give a fair hearing due to lack of adequate notice, harboring bias, failing to follow formal rules of evidence, and lacking evidentiary support for its ruling.

[5]This claim attacked the Board's decision and the Ordinance for depriving MHC of the fair market value of its land without reasonable relation to a legitimate public purpose.

[6]MHC asserted substantive due process as an alternative ground for discerning a constitutional violation.

[7]MHC asserted that it had been singled out for regulation.

[8]The fifth claim sought declaratory relief for the reasons stated in the prior four claims, alleging that the Ordinance constituted a regulatory taking without substantially advancing any legitimate public purpose, effected a private taking, violated MHC's substantive due process rights, and denied MHC equal protection.

MHC sought damages and equitable relief from application of the Ordinance.

On November 9, 2004, the County moved to dismiss the MHC's First Amended Complaint under Fed. R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim upon which relief can be granted). The motion contended that MHC lacked standing, that its as-applied takings claims and due process claims were unripe, that its facial claims were barred by the statute of limitations, and that its other constitutional claims offered no basis for relief. In the alternative, the motion urged the court to "exercise *Younger* or *Pullman* abstention." The district court responded with the following order: "The Court has considered Defendant's motion to dismiss the first amended complaint, together with the moving and opposition papers. It is ordered that the motion be, and hereby is, granted. Date: February 22, 2005." MHC now timely appeals this order.

D

Because abstention has been raised as an issue in this case, we recount related developments in state court. Three days after filing its petition in the federal district court, MHC filed a Petition for Writ of Administrative Mandamus in the California Superior Court, asserting nearly identical claims as in federal court. On November 5, 2004, the County—which had not been served with the petition until October 7—filed a demurrer arguing that MHC lacked standing. On January 4, 2005, MHC filed a First Amended Petition, containing the same allegations as before, but explaining that MHC "controls the actions" of OLP and "has a direct, pecuniary interest in the amount of rent that can be charged at the property it has an interest in, including the Sea Oaks park." On October 19, 2005, the court overruled the demurrer.

On December 7, 2005, MHC filed a Second Amended and Supplemental Complaint in the state trial court, which mir-

rored the claims in its First Amended Complaint previously filed in the federal district court. The state trial court held that MHC had standing and bifurcated the action as to the writ and non-writ claims. The court denied the writ on July 26, 2006, granted judgment on the pleadings for the County on the non-writ claims on November 8, 2006, and entered judgment for the County on December 8, 2006. MHC filed a state court notice of appeal on January 23, 2007. The state trial court judgment and appeal thus occurred after MHC had appealed the district court's order granting the County's motion to dismiss.

## II

The dismissal of a federal complaint requires *de novo* review.[9] We begin with the jurisdictional issue. MHC claims standing based on its financial interest as a partner of OLP. In considering this claim, we must accept as true its assertion that MHC lost revenue when the Board forbade OLP from increasing rents by an average 185%. *See Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988) ("[W]hen standing is challenged on the basis of the pleadings, we 'accept as true all material allegations of the complaint, and . . . construe the complaint in favor of the complaining party.'" (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

**[1]** The government disputes MHC's standing because OLP —not MHC—retains title ownership of the Park. But that argument is too rigid: the application of standing requirements

---

[9]*See Carson Harbor Village, Ltd. v. City of Carson*, 353 F.3d 824, 826 (9th Cir. 2004) (reviewing dismissal under Fed. R. Civ. P. 12(b)(1)); *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 619 (9th Cir. 2004) (reviewing dismissal under Fed. R. Civ. P. 12(b)(6)); *Ross v. Alaska*, 189 F.3d 1107, 1114 (9th Cir. 1999) (reviewing dismissal for want of ripeness); *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1175 (9th Cir. 2000) (reviewing dismissal based on statute of limitations). In doing so, we assume the facts alleged in the complaint to be true. *See Carson Harbor Village*, 353 F.3d at 826.

must not be turned into a "mechanical exercise." *Allen v. Wright*, 468 U.S. 737, 751 (1984). Title ownership is not the only form of interest that can support standing. We have stated more broadly that "[p]ecuniary injury is a sufficient basis for standing." *Fair v. EPA*, 795 F.2d 851, 853 (9th Cir. 1986); *see also Warth v. Seldin*, 422 U.S. 490, 507 (1975) (stating that standing exists where "unless relief from assertedly illegal actions [i]s forthcoming, the plaintiff's immediate and personal interests would be harmed"). MHC's pecuniary interest in the Park is sufficient for standing and we proceed to the merits.[10]

## III

[2] MHC asserts two forms of takings challenges: a facial challenge to the Ordinance itself, and an as-applied challenge to the Board's implementation of the Ordinance to the nine lots in question. The County contends that MHC, even if treated as the current owner, may not bring a facial challenge, because MHC acquired its interest in the property after the Ordinance was enacted. The Supreme Court's decision in *Palazzolo v. Rhode Island*, 533 U.S. 606 (2001), seems to have rejected this view. Indeed, the Court expressly stated that a regulatory takings claim "is not barred by the mere fact that title was acquired after the effective date of the state-imposed restriction." *Id.* at 630. However, our decision in *Carson Harbor Village, Ltd. v. City of Carson*, counsels otherwise.[11] 37 F.3d 468, 476 (9th Cir. 1991) ("The price paid for

---

[10]The jurisdictional question of standing precedes, and does not require, analysis of the merits. Standing "in no way depends on the merits of the [ ] contention that particular conduct is illegal." *Warth*, 422 U.S. at 500.

[11]However, the premise of *Carson Harbor*, that the purchase price reflects the allegedly unconstitutional taking, was expressly rejected by *Palazzolo*: "A law does not become a background principle for subsequent owners by enactment itself." 533 U.S. at 630. In fact, the Court in *Palazzolo* stated that where the State actor "could not have deprived the prior owners" of the property right at stake "the prior owners must be under-

the property presumably reflected the market value of the property minus the interests taken. Carson Harbor has no standing to assert facial claims based on the loss of the premium and the loss of the right to dispose of property.")

**[3]** Furthermore, a takings claim must still comply with timeliness requirements. It must be filed neither too early (unripe) nor too late (barred by a statute of limitations). In *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1984), the Court articulated a two-step analysis to determine whether a regulatory takings claim is ripe: (1) the underlying "administrative action must be final before it is judicially reviewable"[12] and (2) the claimant must have "unsuccessfully attempted to obtain just compensation through the procedures provided by the State."[13] *Id.* at 192, 195.

### A

**[4]** MHC's as-applied challenge satisfies the first prong of the *Williamson* test based upon its first having sought a decision of the Mobilehome Rent Review Board and the subsequent affirmance by the Board of Supervisors. *See*

---

stood to have transferred their full property rights in conveying the lot." 533 U.S. at 629 (quoting *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 834 n.2 (1987)) (internal quotation marks omitted). Nevertheless, we decline to decide whether *Palazzolo* has overruled *Carson Harbor* because such a ruling is not necessary to our disposition and the issue was not directly briefed or argued by the parties despite the apparent irreconcilability of the cases.

[12]This requirement applies only to as-applied challenges. *Hacienda Valley Mobile v. Morgan Hill*, 353 F.3d 651, 655 (9th Cir. 2003) ("Facial challenges are exempt from the first prong of the *Williamson* ripeness analysis because a facial challenge by its nature does not involve a decision applying the statute or regulation.").

[13]This requirement must be satisfied in order to bring either an as-applied or a facial challenge.

*Manufactured Home Cmtys v. City of San Jose*, 420 F.3d 1022, 1035 (9th Cir. 2005) (stating that the claimant "pursued its general rate increase claims through the administrative process provided by the Ordinance" and thus "fulfill[ed] the first prong of the *Williamson County* test for MHC's takings claims related to a general rate increase").

**[5]** However, MHC has not satisfied the second requirement of the *Williamson* test, because it has not attempted to obtain relief through the state procedure designed to provide compensation for rent control losses. In a 1997 decision, the California Supreme Court established a procedure by which a party injured by a government taking could seek compensation. *See Kavanau v. Santa Monica Rent Control Bd.*, 941 P.2d 851 (Cal. 1997). The procedure required "[a]n adjustment of future rents that takes into consideration past confiscatory rents," *id.* at 866, giving homeowners harmed by regulatory takings a means to obtain "just compensation through the procedures provided by the State," *Williamson*, 473 U.S. at 195.

**[6]** Unless a complainant has sought relief through a *Kavanau* adjustment, he cannot file a federal complaint objecting to an uncompensated taking by the state. *See Manufactured Home Cmtys*, 420 F.3d at 1035-36 (dismissing as unripe a complaint filed without first seeking a *Kavanau* adjustment); *see also Carson Harbor Village*, 353 F.3d at 830 (O'Scannlain, J., concurring specially) (dismissing a complaint because the injured party had made "no effort to seek compensation for an alleged taking through a writ of mandamus and a *Kavanau* adjustment").

MHC then seeks to avoid the rule that "a plaintiff cannot bring a section 1983 action in federal court until the state denies just compensation," *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 687 (9th Cir. 1993), by arguing that a *Kavanau* adjustment procedure could not offer adequate compensation. Here MHC relies on a narrow exception to the sec-

ond prong of the *Williamson* test, which allows a claimant to bypass state procedures if such procedures are shown to be "unavailable or inadequate." 473 U.S. at 197. This exception applies only if a party has already "utilized" state procedures and has shown pursuit of such remedies would be futile.

MHC contends that the exception should apply to the *Kavanau* adjustment procedure, because *Kavanau* adjustments only provide for an increase in *future* rents, and do not require landowners to be compensated for rent lost prior to or during the course of the litigation. Although MHC admits that the *Kavanau* court addressed this concern by pointing out in *dicta* that a landlord could "seek[ ] a stay of that regulation during litigation," *Kavanau*, 941 P.2d at 866, MHC contends that California courts never grant such stays. To prove this point, MHC offers only the declaration of Anthony Rodriguez, "an experienced mobilehome park attorney," who believes that seeking a stay would be futile given his "personal knowledge" of "at least four cases" in which California courts denied such stay requests.

We are not impressed by this single declaration and have considered the state decisions on the issue more closely. "The futility exception is narrow, and mere uncertainty does not establish futility." *Manufactured Home Cmtys*, 420 F.3d at 1035. "Although the facts alleged by a plaintiff are assumed true under a motion to dismiss, this court need not accept baseless allegations as proof of futility . . . . MHC's [ ] allegations, at best, produce uncertainty and uncertainty does not equal futility." *Id.*

California law requires that *Kavanau* adjustments include losses incurred during the review process. The California Supreme Court explained this requirement four years after *Kavanau*, expressly clarifying that "the substantial legal and administrative costs attributable to the rent review process . . . should be properly included as expenses when calculating the proper rent readjustment [under *Kavanau*]." *Galland v.*

*City of Clovis*, 16 P.3d 130, 147 (2001). The *Galland* decision ensures that state authorities apply *Kavanau* in a manner that provides compensation for losses occurring during litigation. For that reason, the California Supreme Court rejected the argument now made by MHC— that a *Kavanau* adjustment would not provide adequate compensation and therefore that a party need not seek such remedy before filing a federal complaint. *See id.* at 148 (reversing the court of appeals, which had held that a party need not pursue a *Kavanau* adjustment prior to filing a § 1983 claim and that a *Kavanau* adjustment anyway would have been inadequate). Under California law, a *Kavanau* adjustment "may not arbitrarily exclude the reasonable expenses of seeking legitimate rent increases." *Id.* at 147.

California rent control authorities tasked with making *Kavanau* adjustments have applied the rulings of the California Supreme Court to address potential revenue lost during litigation. Although we have found no published case in which a California court granted a stay pending a *Kavanau* adjustment, rent control authorities have used alternative means to ensure that *Kavanau* adjustments allow property owners to recoup compensable losses incurred during litigation. For example, in one ruling, a city council applying *Kavanau* overturned a rent control board decision that denied a rent increase; the city council then ordered that the rents be adjusted not only to avoid future losses but to compensate for revenue opportunities lost during the review process. *See* City Council of the City of Concord Mobilehome Rent Review Board, Res. No. 05-56, at 7 (Aug. 2, 2005). In another decision, a local rent stabilization board granted rent increases to compensate for losses incurred due to the application of a rent decision that was later overturned. *See* Carpinteria Mobile Home Park Rent Stabilization Board, Res. No. 5031, at 5 (Dec. 6, 2006).

These alternative approaches enable parties to seek adequate compensation from the state. We reject MHC's argu-

ment that "a *Kavanau* adjustment is not an effective remedy unless the park owner successfully *stays* enforcement of the applicable rent control ordinance pending the outcome of the litigation."[14] Although a stay might be useful to *avoid* losses, retrospective compensation also ensures that a property owner does not suffer from unwarranted revenue losses incurred during litigation. We will not second-guess the specific procedures California has chosen to use, so long as the methods provide just compensation.

**[7]** We thus conclude that California's creation and implementation of the *Kavanau* adjustment process provides "an adequate procedure for seeking just compensation, [and] the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Williamson*, 473 U.S. at 195. Because MHC did not seek such compensation, its as-applied challenge to the Board's decision was unripe and the district court properly dismissed that aspect of the claim.

B

The futility analysis differs with respect to MHC's facial takings claim.

---

[14]However, we express some concern that the state's procedure may place an unjust burden upon *future* tenants in order to ensure the just compensation of the landlord, by shifting the financial responsibilities of earlier tenants to later ones. *See Carson Harbor Village*, 353 F.3d at 830 (O'Scannlain, J., concurring specially) ("I write separately to express my concern that California's procedures may not provide 'just compensation' because the burden of compensation falls not on the government as the representative of the benefitting general public, but on a select group of future tenants."). But because this concern does not affect a property owner's claim of adequate compensation, it need not be addressed further in this appeal.

1

**[8]** Following our precedent in this area, *Carson Harbor Village, Ltd. v. City of Carson*, 37 F.3d 468 (9th Cir. 1991), we measure the actionable taking as having occurred in 1984, the time the Ordinance was enacted. At that time, California had no damages remedy for regulatory takings. *See Schnuck v. City of Santa Monica*, 935 F.2d 171, 173 (9th Cir. 1991) ("Prior to the Supreme Court's decision in *First English Evangelical Lutheran Church* [482 U.S. 304 (1987)] we . . . excused such failures in California because California provided no remedy in damages for a taking by a regulatory ordinance, but gave only injunctive or declaratory relief."). It was not until 1987, when the Supreme Court "held California's denial of a damages remedy unconstitutional," that California courts began to provide damages remedies for regulatory takings. *Id.* Because no adequate state remedy was available in 1984, when the ordinance was enacted, MHC need not fulfill the second prong of *Williamson* in order for its facial challenge to be ripe.

2

**[9]** However, under *Carson Harbor*, MHC's facial takings claim fails for lack of standing because the injury is treated as having occurred to the previous landowner.[15] *See Carson*

---

[15]Therefore, we do not have jurisdiction over this portion of MHC's claim. As stated above, because MHC did not directly address whether *Palazzolo*, 533 U.S. at 606, has altered our standing precedent, we decline to reach the question today. Further, MHC erroneously interprets the Supreme Court's decision as eliminating any statute of limitations requirement. While 42 U.S.C. § 1983 does not specify a statute of limitations, the Supreme Court has instructed federal courts addressing § 1983 personal injury claims to follow the statute of limitations of the state in which the challenged action occurred. *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985). Here, the applicable rule can be found in Cal. Code of Civ. P. § 340(3) as codified in 1984, which set forth a *one-year* statute of limitations.

*Harbor*, 37 F.3d at 476 (a subsequent landowner "has no standing to assert facial claims based on the loss of the premium and the loss of the right to dispose of property").

## IV

We turn next to the district court's dismissal of MHC's due process and equal protection claims.[16]

## A

MHC's First Amended Complaint asserted a violation of substantive due process on the grounds that the application of the Ordinance to MHC bore no rational relationship to any legitimate state purpose and served the sole purpose of transferring the value of MHC's property to a select private group of tenants. This argument challenges the foundation of the rent control law and would, if accepted, require its invalidation.[17]

---

Under our circuit law, the statute of limitations on a facial takings claim runs from the date when the statute is enacted. *See De Anza Props. X, Ltd. v. County of Santa Cruz*, 936 F.2d 1084, 1085 (9th Cir. 1991). Here, the statute of limitations expired in 1985, one year after the ordinance was enacted, and eight years before MHC filed this suit. Furthermore, even if we were to conclude that *Palazzolo* prohibits the application of *Carson Harbor* and requires that the limitations period must begin at the time of MHC's acquisition of property, not at the time the original taking occurred, then MHC had one year to file its facial takings claim after it acquired the property in 1997. Because MHC filed its claim in 2003, it exceeded the statute of limitations by five years. In other words, under either approach MHC's claim must fail.

[16]MHC presented this claim to the district court "solely in the alternative, in the event that . . . MHC's Second Claim for Relief is not cognizable as a matter of law under the Fifth Amendment's Takings Clause."

[17]The parties dispute whether takings jurisprudence governs this challenge, or whether its merits turn only upon our due process doctrine. The Supreme Court's decision in *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 537 (2005), answers this question: "[The Takings Clause] 'is designed not

**[10]** The Supreme Court and this Circuit have upheld rent control laws as rationally related to a *legitimate public purpose*. In *Pennell*, 485 U.S. 1, the Court concluded that a challenged ordinance "represents a rational attempt to accommodate the conflicting interests of protecting tenants from burdensome rent increases while at the same time ensuring that landlords are guaranteed a fair return on their investment," *id.* at 13, adding that "we have long recognized that a legitimate and rational goal of price or rate regulation is the protection of consumer welfare." *Id.*[18]

**[11]** The Ordinance challenged by MHC includes a paragraph describing its purpose, which is to "protect the owners and occupiers of mobilehomes from unreasonable rent increases, while at the same time recognizing the need of park owners to receive a suitable profit." County of San Luis Obispo, Cal., Code § 25.01.010(c). *Pennell* makes clear that such an ordinance is rationally related to a legitimate public purpose, a point we underscored in *Carson Harbor Village*:

> A generally applicable rent-control ordinance will survive a substantive due process challenge if it is "*designed* to accomplish an objective within the government's police power, and if a rational relationship

---

to limit the governmental interference with property rights *per se*, but rather to secure *compensation* in the event of otherwise proper interference . . . .' " Due process violations cannot be remedied under the Takings Clause, because "if a government action is found to be impermissible—for instance because it fails to meet the 'public use' requirement or is so arbitrary as to violate due process—that is the end of the inquiry. No amount of compensation can authorize such action." *Id.* at 543.

[18]More generally, the Supreme Court has upheld regulations that fix the prices or rents in certain industries but not others. *See, e.g.*, *FCC v. Fla. Power Corp.*, 480 U.S. 245, 250-54 (1987) (approving limits on rates charged to cable companies for access to telephone poles); *FPC v. Texaco Inc.*, 417 U.S. 380, 397-98 (1974) (recognizing that federal regulation of the natural gas market was in response to the threat of monopoly pricing).

existed between the provisions and the purpose of the ordinances." This deferential inquiry does not focus on the ultimate effectiveness of the law, but on whether the enacting body could have rationally believed at the time of enactment that the law would promote its objective.

*Carson Harbor Village Ltd. v. City of Carson*, 37 F.3d 468, 472 (9th Cir. 1994), *overruled on other grounds by WMX Tech. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (citations omitted). Applying this standard in *Carson Harbor Village*, we upheld an ordinance that set "a maximum ceiling on rent levels that can be charged for a space in mobile home parks" and established a rent review board "to hear claims for increases above the ceiling." *See id.* at 471-72. MHC's substantive due process claim lacks merit under governing law. The district court properly dismissed it.[19]

### B

In its equal protection challenge, MHC claims that the Ordinance was created unlawfully to discriminate against a class of persons in a manner "unrelated to any legitimate governmental interest." MHC claims that the Ordinance singled out mobilehome owners "from property owners of all other types of housing in the San Luis Obispo County to bear the

---

[19]MHC argues that *Lingle* entitles it to a remand in order to develop other claims that would constitute takings challenges rather than due process ones. For this proposition, it relies upon the *Lingle* Court's comment that "we reaffirm that a plaintiff seeking to challenge a government regulation as an uncompensated taking of private property may proceed under one of the other theories discussed above—by alleging a 'physical' taking, a *Lucas*-type 'total regulatory taking,' a *Penn Central* taking, or a land-use exaction violating the standards set forth in *Nollan* and *Dolan*." *Lingle*, 544 U.S. at 548. This *reaffirmation* by the *Lingle* Court cannot be read as a suggestion that a claimant who fails to raise available claims should have another chance to do so upon remand. The *Lingle* Court merely explained that it did not bar all existing forms of takings claims. MHC deserves no second bite at the complaining apple.

burden and expense of providing economic benefits to tenants" and allowed "[a]ll other property owners . . . to adjust rents to market upon a change of tenancy."

**[12]** This equal protection challenge must be considered under rational basis review because mobilehome park owners are not a suspect class. *See Watson v. Maryland*, 218 U.S. 173, 179-80 (1910) (applying the rational basis test to occupational classifications). Therefore, "the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). "Under rational-basis review, where a group possesses distinguishing characteristics relevant to interests the State has the authority to implement, a State's decision to act on the basis of those differences does not give rise to a constitutional violation." *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 971 (9th Cir. 2003) (quoting *Bd. of Trs. v. Garrett*, 531 U.S. 356, 366-67 (2001)) (internal quotation marks omitted). Here, the County sought to regulate mobilehome park rents because of the "shortage of spaces for the location of existing mobilehomes" within the County and "the high costs and impracticability of moving mobilehomes [and] the potential for damage resulting therefrom," among other reasons. *See* County of San Luis Obispo, Cal. Code § 25.01.010. These reasons appear to constitute "distinguishing characteristics relevant to interests the State has the authority to implement." *Hotel & Motel*, 344 F.3d at 971. The district court properly dismissed the equal protection claim as well.

## V

Finally, we address the petition for a writ of administrative mandamus filed by MHC in the Central District of California.[20] In its petition, MHC asserted that a writ was warranted under

---

[20]MHC filed this claim first as a petition, and then as one of five causes of action in its First Amended Complaint.

Cal. Code Civ. P. § 1094.5 because the Rent Review Board and Board of Supervisors acted "in excess of their jurisdiction" and in violation of MHC's "due process rights under the state and federal constitutions." MHC specifically challenged the adequacy of the Board's notice of its hearings, its refusal to allow cross-examination, and its consideration of hearsay.

MHC contends that federal law required issuance of the writ, because the Board provided inadequate notice of its administrative proceedings and because the Board considered hearsay, depriving MHC of its alleged right to confront the witnesses.

However, the district court's order did not state whether the petition failed to state a ground for relief. *See* Fed. R. Civ. P. 12(b)(6) (allowing dismissal for "failure to state a claim upon which relief can be granted"). Indeed, the district court did not reveal the grounds upon which it based its dismissal. *See supra* page 15744. "In the absence of grounds upon which the order rests, we are required to affirm it if it may be sustained upon any ground." *Lemm v. N. Cal. Nat'l Bank*, 93 F.2d 709, 710 (9th Cir. 1937) (citing *United States v. One Distillery*, 174 U.S. 149 (1899)).

**[13]** Under *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny, a federal court should abstain from hearing a case that would interfere with ongoing state proceedings.[21] The Supreme Court has explained that the "importance of the state interest in the pending state judicial proceedings and in the federal case calls *Younger* abstention into play," and that "[s]o long as the constitutional claims of respondents can be determined in the state proceedings and so long as there is no

[21]*Younger* dealt with ongoing state criminal proceedings, but the same abstention principle was extended to civil actions in *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) ("The policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved.").

showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." *Middlesex*, 457 U.S. at 435.

**[14]** MHC has made "no showing of bad faith, harassment, or some other extraordinary circumstance." *Id.* However, MHC asserts that *Younger* abstention would not justify dismissal, because the state action was filed three days *after* MHC filed its district court complaint. We do not accept this argument. The Supreme Court has made clear that a filing date is not dispositive:

> [No] case in this Court has held that for *Younger v. Harris* to apply, the state criminal proceedings must be pending on the day the federal case is filed. Indeed, the issue has been left open; and we now hold that where state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of *Younger v. Harris* should apply in full force.

*Hicks v. Miranda*, 422 U.S. 332, 349 (1975) (citation omitted and emphasis added).[22] The facts belie MHC's claim that the state action was filed merely as a defensive precaution and the state case lay "dormant." In fact, the state trial court has completed its proceedings and rendered a judgment. *See supra* page 15745.

**[15]** The district court dismissed the complaint without discussing the merits of MHC's claims. Where no "proceedings of substance on the merits have taken place in the federal court, the principles of *Younger v. Harris* . . . apply in full

---

[22]This quote refers to criminal proceedings. As noted above, the Court has since applied *Younger* principles to non-criminal judicial proceedings as well.

force." *Hicks*, 422 U.S. at 349.[23] We conclude that *Younger* abstention justified the district court's dismissal of the petition for a writ of administrative mandamus.[24]

## VI

In sum, we conclude that MHC has standing based on its financial interest in the Park. However, we affirm the district court's order dismissing its complaint. The complaint contained no claim upon which relief could be granted, because its as-applied takings claim was unripe, its facial claims failed to satisfy the applicable statute of limitations, and its due process and equal protection claims lacked merit under the United States Constitution. Moreover, the principles of abstention justify the district court's dismissal of the petition for a writ of administrative mandamus, and we decline to disturb the state trial court's subsequent decision denying the writ.

---

[23]MHC then argues that even if *Younger* abstention applies, this proceeding should at most be *stayed*. For this proposition, MHC cites *Gilbertson v. Albright*, 381 F.3d 965 (9th Cir. 2004) (en banc). In *Gilbertson*, we stated:

> We conclude that *Younger* principles apply to actions at law as well as for injunctive or declaratory relief because a determination that the federal plaintiff's constitutional rights have been violated would have the same practical effect as a declaration or injunction on pending state proceedings. However, federal courts should not dismiss actions where damages are at issue; rather, damages actions should be stayed until the state proceedings are completed.

*Id.* at 968. *Gilbertson* did not require a stay for damages claims that would be dismissed as untimely or meritless on the pleadings, such as MHC's takings, due process, and equal protection claims. Nor did *Gilbertson* require a stay with respect to the petition for a writ of administrative mandamus, because that did not constitute a "damages action."

[24]Having thus concluded that abstention would apply, we do not reach the County's alternative argument that *Pullman* abstention would apply as well.

The district court's order dismissing MHC's First Amended Complaint is **AFFIRMED**.