# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2829

_____

Rosemary Jackson Wimbley,     \*
                                \*
            Appellee,     \*
                                  \*    Appeal from the United States
         v.                    \*    District Court for the
                                  \*    Eastern District of Arkansas.
Mark Cashion,                    \*
                                  \*
            Appellant.    \*
                                  \*

_____

Submitted: September 25, 2009
Filed: December 3, 2009

_____

Before MELLOY, GRUENDER, and BENTON, Circuit Judges.

BENTON, Circuit Judge.

Rosemary Jackson Wimbley sued Mark Cashion for race and sex discrimination in violation of 42 U.S.C. § 1983. The district court,[1] on summary judgment, denied Cashion the defense of qualified immunity. Cashion appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

_____

[1]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

I.

Wimbley, an African-American female, was a correctional officer with the Arkansas Department of Correction. In 2005, Wimbley escorted a civilian nurse into B pod. When Wimbley entered, she announced that she would pepper-spray inmates who exposed themselves. She had heard that a B pod inmate had been exposing himself that day. According to Wimbley, she accidentally discharged her pepper spray in B pod. Due to the smell, the inmates were evacuated from B pod, but were not harmed. One inmate resisted returning to his cell until he could shower and speak with a supervisor. In response, Sergeant Steven Smith, a white male, sprayed the inmate twice with pepper spray, threw him on the floor, and placed a knee on his neck.

Wimbley has consistently claimed that her pepper-spray discharge was accidental. Warden Mark Cashion terminated her for violating policy, threatening secured inmates, and following through on the threat. In contrast, Cashion exonerated Smith, concluding that he acted within department policy.

On summary judgment, the district court dismissed all of Wimbley's claims except for race and sex discrimination against Cashion in his individual capacity (and claims for injunctive relief). The court found genuine issues of material fact whether Cashion's reasons for discharging Wimbley were pretextual, and denied qualified immunity.

II.

This court reviews de novo a denial of qualified immunity. ***Duckworth v. St. Louis Metro. Police Dep't***, 491 F.3d 401, 405 (8th Cir. 2007). This court looks at the record most favorably to the party opposing the motion, drawing all inferences for that party. ***Id***. "Whether a given set of facts entitles the official to summary judgment on

qualified immunity grounds is a question of law. But if there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment." ***Olson v. Bloomberg***, 339 F.3d 730, 735 (8th Cir. 2003).

In a qualified immunity inquiry, the first question is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" ***Saucier v. Katz***, 533 U.S. 194, 201 (2001). The second question is "whether the right was clearly established." ***Id***. The order of the *Saucier* inquiry is no longer mandatory, but often beneficial. ***Pearson v. Callahan***, 129 S.Ct.808, 818-20 (2009)

A.

As to the first question, Wimbley alleges race and sex discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. A plaintiff may survive summary judgment either by direct evidence of discrimination, or by creating an inference of discrimination under the burden-shifting test in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973), and then rebutting any proffered nondiscriminatory reason for the employment decision with sufficient evidence of pretext. ***King v. Hardesty***, 517 F.3d 1049, 1057 (8th Cir. 2008).

Wimbley presented no direct evidence, so the *McDonnell Douglas* framework applies. Wimbley thus has the initial burden to establish a prima facie case of discrimination. *See* ***Bearden v. International Paper Co.***, 529 F.3d 828, 831-32 (8th Cir. 2007). If she establishes a prima facie case, the burden shifts to Cashion to articulate a legitimate, non-discriminatory reason for his action. ***Id***. If he articulates such a reason, the burden returns to Wimbley to prove that the proffered reason is pretextual. ***Id***.

1.

To establish a prima facie case of discrimination, Wimbley must show: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008).

Cashion does not contest the first three elements. He argues that Wimbley cannot establish that she was treated less favorably than a similarly situated, non-African-American, male. Wimbley responds that she is similarly situated to Smith, a white male, who was treated more favorably.

This court has two lines of cases on the standard to determine whether employees are "similarly situated" at the prima facie stage of the *McDonnell Douglas* test. *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 851 (8th Cir. 2005). One line sets a "low threshold," requiring only that the employees are "involved in or accused of the same or similar conduct and are disciplined in different ways." *Id.* The other line more rigorously requires that the employees be "similarly situated in all respects." *Id.* The district court used the low-threshold standard, finding that Wimbley and Smith were similarly situated because both had the same supervisor and were involved in a pepper-spray incident. Cashion, invoking the more rigorous "all respects" standard, argues that Smith and Wimbley were not similarly situated because Smith acted consistently with policy and Wimbley did not.

The *Rodgers* case concludes that the low-threshold standard "more accurately reflects Supreme Court precedent." *Id.* "The Supreme Court has stated: 'The burden of establishing a prima facie case of disparate treatment is not onerous.'" *Id. quoting Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). By contrast, the *Fields* case invoked by Cashion does not discuss why its standard should be used. *See*

*Fields*, 520 F.3d at 864. In light of the Supreme Court's language in *Burdine*, and this court's analysis in *Rodgers*, this opinion applies the low-threshold standard.

Applying that standard, the district court correctly concluded that Wimbley and Smith are similarly situated. They were involved in similar pepper-spray conduct but were disciplined in different ways. Based on the summary judgment record, Wimbley established a prima facie case of discrimination**.**

2.

The burden then shifts to Cashion to articulate a legitimate, nondiscriminatory reason for his action. The district court ruled that he articulated such a reason, which is uncontested on appeal.

3.

The burden returns to Wimbley to show that the proffered reason was pretextual. At this stage, the test for determining whether Smith is similarly situated to Wimbley is rigorous. *See Rodgers*, 417 F.3d at 853. Wimbley must show that she and Smith are similarly situated in all relevant respects. "To be probative evidence of pretext, the misconduct of the more leniently disciplined employees must be of comparable seriousness." *Id.* (internal citations and quotation marks omitted).

Here, Smith and Wimbley were both correctional officers, both supervised by Cashion, both regularly carried pepper spray, and both discharged it in the presence of an inmate. Cashion's supervisor, Captain Walls, said that the conduct of both Wimbley and Smith was unacceptable and that "employee discipline is pending on both staff members pertaining their performance and lack thereof." Wimbley and Smith are similarly situated in all relevant respects, and their misconduct is of comparable seriousness.

Cashion argues that Wimbley used the pepper spray only to harass and intimidate, while Smith used it to subdue a resistant inmate. Cashion says Wimbley's use of pepper spray was inconsistent with policy, while Smith's was consistent. Most favorably to Wimbley, Cashion's acts after the incident are evidence of pretext. Cashion refused to believe Wimbley's assertion that her discharge of pepper spray was accidental, and characterized her action as premeditated, despite statements from many prisoners to the contrary. Cashion believed Smith's reasons for using pepper spray despite statements from many prisoners that the inmate offered no resistance. According to policy, incidents involving the use of force are forwarded to internal affairs for review. Cashion terminated Wimbley before asking internal affairs to investigate. Cashion took no disciplinary action against Smith but sent the incident to internal affairs.

A reasonable jury could find that Cashion's different treatment of Wimbley and Smith are evidence that the stated reasons for Wimbley's firing were pretextual. Wimbley's race and sex discrimination claims survive summary judgment under *McDonnell Douglas*. Taken in the light most favorable to Wimbley, Cashion's conduct violated her rights under the Fourteenth Amendment. Cashion is not entitled to qualified immunity under part one of the *Saucier* inquiry.

B.

The second *Saucier* inquiry is whether the right was clearly established. There is no question that Wimbley's right to be free from racial or sex discrimination was well-established at the time of her termination. *See* **Civil Rights Act of 1964 § 703(a)(1), 42 U.S.C. § 2000e-2(a)(1)** ("It shall be an unlawful employment practice for an employer to...discharge any individual...because of such individual's race, color, religion, sex, or national origin...."). Cashion argues that the district court should have inquired whether the right was established in a more "particularized" sense and whether the contours of the right were "sufficiently clear that a reasonable

official would understand that what he is doing violates that right." However, this court has previously held: "The constitutional right to be free from [racial or gender] discrimination is so well established and so essential to the preservation of our constitutional order that all public officials must be charged with knowledge of it." ***Goodwin v. Circuit Court of St. Louis County***, 729 F.2d 541, 546 (8th Cir. 1984).

## III.

The order of the district court is affirmed, and the case remanded for proceedings consistent with this opinion.

_____