# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1667

_____

| | |
|---|---|
| James Lockhart, | * |
| | * |
|        Appellant, | * |
| | *   Appeal from the United States |
|   v. | *   District Court for the Northern |
| | *   District of Iowa. |
| CRST, Inc., CRST International, | * |
| Inc., and CRST Van Expedited, Inc., | *   [UNPUBLISHED] |
| | * |
|        Appellees. | * |

_____

Submitted: February 10, 2010
Filed: April 1, 2010

_____

Before LOKEN,[1] Chief Judge, GRUENDER and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

James O. Lockhart, II, an African-American male, was employed by CRST, Inc., as a truck driver. After being terminated, he sued CRST claiming discrimination based on race. The district court[2] granted summary judgment for CRST, ruling that

_____

[1]The Honorable James B. Loken stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2010. He has been succeeded by the Honorable William Jay Riley.

[2]The Honorable Jon Stuart Scoles, United States Magistrate Judge for the Northern District of Iowa, sitting with the consent of the parties pursuant to 28 U.S.C. § 636(c).

Lockhart failed to establish a prima facie case. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

In 2004, Lockhart was paired with a co-driver named Ulysses Thomas (also an African-American male). On their first run, Lockhart and Thomas argued over minor issues (for example, Thomas "became aggressive" when Lockhart woke him up for his turn to drive; Thomas got mad when Lockhart moved his food and belongings from the floor of the truck). Lockhart called CRST and the police, who did nothing the first time. The friction continued. Lockhart called police again. According to Thomas, Lockhart wanted the bottom bunk and "pulled a cork skrew [sic] on" Thomas, so Thomas called the police. According to Lockhart, Thomas came at him (and the police) with a hammer and was restrained. Although CRST requested witness statements and police reports from both men, the only documentation produced was a witness statement that said Thomas was acting belligerent. Lockhart was not paired with Thomas again, and later got a restraining order against him.

In March 2005, Lockhart's co-driver backed into another truck at a truck stop. Another driver, William Maynard, an independent contractor working for CRST, apparently saw the collision. Lockhart noticed Maynard standing outside the truck stop, jotting down information about Lockhart's truck. Lockhart confronted him, saying: "I don't know how long you been driving a truck, but I do know there's drivers out here that would get highly upset for what you just did." Maynard responded: "Oh, what was that?" Lockhart continued: "Well, you came over here and you're writing down – You didn't see anything. You're writing down information and stuff on trucks and stuff like that. There's drivers that get upset about that, take that the wrong way and may want to hurt you or jump on you. You may want to be careful about that." Maynard got upset, directing racial slurs and curse words at Lockhart. Lockhart claims Maynard balled up his fist to launch a punch. Lockhart punched Maynard in the face. Police were called, who directed Maynard to stop using the racist words.

Lockhart claims he acted in self defense. Two witnesses said Maynard started the incident. Neither party pressed charges.

CRST's safety manager spoke with both drivers. Lockhart admitted punching Maynard in the face. He was terminated within two hours. In his affidavit, the safety manager said he "considered it significant" that Lockhart had previously been involved in a "fighting incident with a co-driver, as documented by Mr. Lockhart's supervisor at the time. . . ."

Lockhart sued in district court, alleging race discrimination in violation of Title VII of the Civil Rights act of 1964. CRST moved for summary judgment, which the magistrate judge granted, finding that Lockhart failed to make a prima facie case of discrimination, and alternatively that CRST provided a legitimate, non-discriminatory reason for Lockhart's termination which he could not establish was pretextual. Lockhart appeals, arguing he established a prima facie case and that CRST's stated reason for terminating him was pretextual.

II.

This Court reviews a district court's grant of summary judgment de novo. *Jackson v. United Parcel Service, Inc.*, 548 F.3d 1137, 1140 (8th Cir. 2008). "In doing so, we apply the same standard as the district court, viewing the evidence in the light most favorable to the nonmoving party and giving that party the benefit of all inferences that may reasonably be drawn." *Id.* "Summary judgment should be granted if 'there is no genuine issue as to any material fact and [ ] the movant is entitled to judgment as a matter of law.'" *Id. quoting* Fed. R. Civ. P. 56(c).

Because Lockhart presents no direct evidence of racial discrimination, this court applies the analytical framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 729 (1973). Lockhart has the initial burden of establishing a prima facie case of discrimination. *See* **Wimbley v. Cashion**, 588 F.3d 959, 961 (8th Cir. 2009). If he

establishes a prima facie case, then the burden shifts to CRST to articulate a legitimate, non-discriminatory reason for its action. *See id.* If CRST articulates such a reason, the burden returns to Lockhart to prove that the proffered reason is pretextual. *See id.*

To establish a prima facie case of discrimination, Lockhart must show that (1) he is a member of a protected class; (2) he was meeting his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. *Id.* at 962. The first three elements of Lockhart's prima facie case are not disputed. Lockhart is an African-American, his overall job performance was "average," and he was terminated.

CRST argues that Lockhart fails to meet the final element of his prima facie case because he does not show that similarly-situated white employees were treated more favorably. CRST submitted the records of a number of white employees who were terminated for fighting. Lockhart tries to distinguish these employees from himself in terms of experience, performance, and other factors. However, this does not establish that similarly situated employees outside the protected class were treated differently. At best, it establishes that non-similarly situated employees outside the protected class were treated similarly.

Lockhart next attempts to use as comparators employees who were attacked by their co-drivers. He argues that since CRST considered his previous fighting incident significant in the decision to terminate him, people who were assaulted by their co-driver, were white, and were not disciplined are similarly situated employees outside the protected class who were treated differently. However, Lockhart was not terminated simply for being involved in a "fighting incident." He was terminated for punching someone in the face after having previously been involved in a fighting incident. Lockhart presents no evidence that any CRST employee so situated was treated differently.

-4-

Finally, Lockhart points to two employees who assaulted others, and thus were similarly situated. In September 2005, Todd Bullock, who is white, slapped his (co-driver) wife after she assaulted him with a knife. According to CRST's Termination Record, both Bullock and his wife were terminated for this incident, so they were not treated differently than Lockhart. Dean Allen, also a white male, was also "terminated because he assaulted his co-driver," according to the Termination Record. The only CRST employees who were similarly situated to Lockhart (assaulted someone) but were outside the protected class were also terminated.

Taking the facts most favorably to Lockhart, he fails to establish that similarly situated employees outside the protected class were treated differently. Lockhart fails to make a prima facie case of discrimination under the *McDonnell Douglas* framework.[3]

### III.

The judgment of the district court is affirmed.

_____

_____

[3]This court need not address whether CRST articulated a non-discriminatory reason for its action, or whether that reason was pretextual.